[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 311.]

THE STATE OF OHIO, APPELLEE, *v*. DAVIE, APPELLANT.

[Cite as *State v. Davie*, 1997-Ohio-341.]

*Criminal law—Aggravated murder—Death penalty upheld, when.*

(No. 96-452—Submitted February 18, 1997—Decided November 26, 1997.)

APPEAL from the Court of Appeals for Trumbull County, No. 92-T-4693.

————————————

{¶ 1} On the morning of June 27, 1991, defendant-appellant Roderick Davie entered his former place of employment, Veterinary Companies of America ("VCA"), in Warren and murdered John Ira Coleman and Tracey Jefferys, and attempted to murder William John Everett.

{¶ 2} Davie worked at VCA, a distributor of pet and veterinarian supplies in Warren, for almost a year until he was fired in April 1991. While employed at VCA, Davie got along well with fellow employees Tracey Jefferys and John Everett, and socialized with them outside the workplace. After Davie's termination from VCA, Coleman was hired as a truck driver. Approximately one week before the murders, Davie and Everett ran into each other at a cafe and had a friendly conversation.

{¶ 3} On June 27, Everett arrived to work at VCA at approximately 6:50 a.m. Jefferys, who as VCA secretary normally arrived at 9:00 a.m., got in at 6:55 a.m. to open the building. Coleman got to work at approximately 7:20 a.m., and the three went about their normal workday routine. As Everett was loading his truck for deliveries, Davie appeared at the VCA warehouse around 7:30 a.m. and spoke briefly with him. Everett knew that Davie wasn't permitted there and brushed Davie off while continuing to load his truck. When Everett finished, he turned around, but Davie was not there. Everett proceeded into the lunch room to pick up his supplies and invoices.

**{¶ 4}** Suddenly, Davie came up behind Everett with Tracey, who was crying and shaking. Davie had a black revolver in his right hand and ordered Everett and Tracey to get in the warehouse area of the VCA building. Upon entering the warehouse, Davie yelled at Coleman, who was still loading his truck, to come over. Davie then ordered the three to lie face down on the warehouse floor.

**{¶ 5}** As they were lying down, Davie said to them, "So, you all work for VCA, huh?" Everett then heard gunshots, and he saw the first shot hit the floor near his left arm. Then, Everett felt shots in the back of his head, shoulder, and left arm, but he remained conscious.

**{¶ 6}** Everett heard Tracey get up and thought she ran toward the dock area. Another shot was fired. Everett heard Davie call out to Tracey, "Come here, bitch," and brought her back. Davie then said to Coleman, "So you ain't dead yet, huh, brother?" Another shot was fired. Davie then took Everett's wallet from his left rear pocket and said to Tracey, "You're lucky, I'm out of bullets." Everett heard Tracey run and open the lunch room door while Davie pursued her.

**{¶ 7}** At no time did Everett see any person at VCA other than Coleman, Jefferys, and Davie. For three to five minutes, Everett heard Tracey screaming loudly from the lunch room. Then her screaming stopped, and Everett remained lying on the warehouse floor, thinking over what to do next while hearing his blood drip down the floor drain to his right. Everett looked up and initially saw neither Tracey nor Davie. As he looked around, he saw Davie with his back to him, standing in the doorway of an office. Everett, though wounded, then made his way out of the building through the north dock door.

**{¶ 8}** At that time, Donna Smith was driving along Main Street on her way to work. She saw a bleeding white male, later identified as Everett, stumbling across the VCA parking lot, and waving his hands trying to attract attention. Smith then saw a black male come out from the VCA dock area and run around the front of a parked truck. Smith stopped her car on the bridge near VCA to get out and

attempt to aid Everett. Another woman driving by also stopped to help. However, before they could get to Everett, a truck came "flying out" of the VCA parking lot across both lanes of Main Street. Everett managed to get up and stumble across Main Street. He climbed over the bridge abutment and fell underneath it to get away from the truck, which was speeding towards him. The truck, however, crashed into the side of the bridge. The black male driving the truck got out, stared at Smith for about fifteen seconds, and then jumped over the side of the bridge. Smith and the other woman then went to summon help. Later that morning, Smith chose Davie's photo out of an array and identified him as the man she saw in the truck.

{¶ 9} Everett testified that he jumped over the end of the bridge in order to avoid the truck. After the truck crashed into the bridge, Davie came at Everett with a stick and began hitting him on the head and trying to poke him in the eye. After a brief struggle, Davie apparently saw someone looking down from the bridge and fled.

{¶ 10} Police Officer Michael Albanese arrived on the scene and found the VCA truck up against the bridge abutment. He found Everett near death on the ground down from the bridge abutment. Albanese told Everett, who was weak and talking in a low voice, that he was going to take a dying declaration from him. Everett told him the name of his assailant, and Albanese reported the name of "Robert Davis" as the suspect over the police radio. A short time later, Albanese again asked Everett who his assailant was. Everett told Albanese that he knew his assailant, and Albanese then gave the name "Roderick Davie" out over the police radio.

{¶ 11} Everett informed Albanese that two more people had been shot and were in the VCA building. Police officers then found John Coleman and Tracey Jefferys dead in the VCA building.

**{¶ 12}** A folding chair near Jefferys's body bore Davie's fingerprint in blood. Hairs on the chair proved to be microscopically consistent with Jefferys's hair. Police found a revolver in the truck.

**{¶ 13}** Dr. Roberto E. Ruiz, Chief Deputy Coroner in Summit County and Deputy Coroner in Stark County, performed autopsies on Coleman and Jefferys. He testified that Coleman, shot four times, died almost immediately when he was shot in the head. Dr. Ruiz stated that Jefferys's death was caused by lesions in the brain and skull fracture due to blunt force trauma. Dr. Ruiz opined that Jefferys's injuries could have been caused by a folding chair. Dr. Ted Soboslay, Coroner of Trumbull County, concurred in Dr. Ruiz's findings.

**{¶ 14}** At approximately 8:30 a.m. on the day of the murders, Carl Miller, chief bailiff at the Warren Municipal Court, received a phone call from Dwayne "Styx" Thomas, whom he had known for several years. Thomas told Miller that he was not involved in the murders, but that he had the perpetrator with him, whom he identified as Davie. Miller and Police Captain Timothy Downs went to the White Court address given by Thomas, arrested Davie, and advised him of his *Miranda* rights. Because of an active capias warrant on Thomas, police also took him with Davie to police headquarters. However, Thomas was not formally placed under arrest.

**{¶ 15}** At the police station, Lt. Carl Blevins and Det. Morris Hill twice advised Davie of his constitutional rights. The first time, Davie declined to sign a waiver of rights; the second time, he said that he did not want to make a statement. The questioning then ceased and Davie was taken to a cell.

**{¶ 16}** Around 2:00 p.m. that afternoon, Davie told Sgt. Mark Massucci that he wanted to talk to Det. Sgt. Gary Vingle. Davie was brought back to an interview room, and police again advised him of his *Miranda* rights. Davie told the detectives, "I just flipped out this morning. * * * I went down to VCA and shot 'em up." Davie admitted that he shot both Coleman and Everett and that he beat Jefferys

4

with a chair. Davie further admitted that he tried to run Everett over with a truck and that he came back home in Jefferys's car.

{¶ 17} Sgt. Massucci testified that he went with Thomas to the White Court residence where Davie lived with his girlfriend, Sonya Barnes. There, Thomas directed Massucci to a wooded area behind the homes on White Court, where they found a plastic bag containing Davie's clothes. Davie had told Thomas that he had thrown the bag of clothing there. In the bag were bloodstained clothes, cartridge casings, and Jefferys's checkbook, which was in the back pocket of the blue jeans found in the bag. The blood stains on Davie's shirt were consistent with Jefferys's blood. The casings had been fired from the gun found in the truck.

{¶ 18} Later in the day, detectives went to Barnes's home, where they were given permission to search the premises without a warrant. When they walked in, they saw Jefferys's black change purse on the kitchen table and Everett's wallet on top of the refrigerator. Barnes said that the change purse was not hers, and she did not know to whom it belonged.

{¶ 19} In July 1991, the grand jury indicted Davie on four counts of aggravated murder for the murders of Coleman and Jefferys: two counts charging violations of R.C. 2903.01(A), and two counts charging violations of R.C. 2903.01(B). The four aggravated murder counts each carried four specifications: murder as "a course of conduct" involving the killing of two or more persons (R.C. 2929.04[A][5]); murder during a kidnapping (R.C. 2929.04[A][7]); murder during an aggravated robbery (R.C. 2929.04[A][7]); and murder during an aggravated burglary (R.C. 2929.04[A][7]). In addition, Davie was indicted for the attempted aggravated murder of Everett (R.C. 2923.02) with a firearm specification; three counts of kidnapping of Coleman, Jefferys, and Everett (R.C. 2905.01[A][2] and [3]); two counts of aggravated robbery of Jefferys and Everett (R.C. 2911.01); and one count of aggravated burglary by stealth (R.C. 2911.11[A][2]).

**{¶ 20}** A jury trial commenced in March 1992. At trial, Thomas testified that Davie woke him up on the morning of June 27, 1991 and told him that he "killed somebody." Thomas initially disbelieved Davie until he saw and smelled the blood on Davie's arms and pants. When Davie asked Thomas for money to go back to California, Thomas told Davie that he should turn himself in. Shortly thereafter, Thomas called Carl Miller. Thomas also testified that he saw the wallet and change purse on the table at Barnes and Davie's home that morning.

**{¶ 21}** The jury found Davie guilty of all charges and specifications. Prior to the mitigation hearing, the state dismissed the third and fourth counts of aggravated murder and proceeded at the penalty phase on only the first two counts charging prior calculation and design and on the accompanying specifications.

**{¶ 22}** The jury recommended death on both aggravated murder convictions, and the court sentenced Davie to death. The court also imposed consecutive terms of imprisonment on the remaining convictions. Upon appeal, the court of appeals affirmed the convictions and sentence of death.

**{¶ 23}** The cause is now before this court upon an appeal as of right.

———————————

*Dennis Watkins,* Trumbull County Prosecuting Attorney, *Patrick F. McCarthy* and *Deborah L. Smith,* Assistant Prosecuting Attorneys, for appellee.

*Reinhart Law Office* and *Harry R. Reinhart*; and *Carol A. Wright,* for appellant.

———————————

**PFEIFER, J.**

**{¶ 24}** Appellant has raised twenty-eight propositions of law. We have reviewed each and have determined that none justifies reversal of appellant's convictions for aggravated murder and the other crimes he committed. We have also independently weighed the aggravating circumstances against the evidence presented in mitigation, and reviewed the death penalty for appropriateness and

proportionality. For the reasons that follow, we affirm appellant's convictions and death sentence.

### Pretrial Issues

{¶ 25} In his first proposition of law, Davie raises two interrelated claims of error. First, Davie, who is African American, argues that the trial court intimidated one of the prospective jurors when that juror questioned why there was a lack of African Americans in the jury pool.

{¶ 26} When the juror in question asked the judge about the jury pool, the judge explained the jury selection process. The juror was not satisfied with the judge's explanation, saying, "It's kind of strange that you have 50,000 people in the City of Warren and there's only one black man here." The trial judge called counsel to the bench, and, thereafter, Davie's attorney moved for the jury list to be supplemented.

{¶ 27} Soon thereafter, the judge and the prospective juror had another colloquy. The judge asked the juror if he was asking to be excused, and when making that inquiry asked, "[D]o I smell alcohol on you?" The juror at first responded, "I don't think so." Later, he denied that he had been drinking.

{¶ 28} The judge asked the juror if he had spoken to a reporter about the case. The juror denied it. However, when called before the bench, a reporter did state that she had spoken to the juror about the makeup of the jury pool. The judge admonished the juror and threatened him with contempt for future transgressions.

{¶ 29} Second, Davie asserts that the trial court's refusal to grant his motion to supplement the annual list of potential jurors with a list of licensed drivers deprived him of an impartial jury from a fair cross-section of the community.

{¶ 30} Davie contends that the exchange between the judge and juror was outrageous and reflected a bias by the trial judge against protecting his rights. While the colloquy between the trial judge and prospective juror was unfortunate, it was not prejudicial to the rights of defendant.

**{¶ 31}** In these types of situations, we defer to the actions of the trial judge, who was in the best position to respond appropriately to any inquiries. See, generally, *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276. It has been long held that determination of issues raised in voir dire in criminal cases is within the discretion of the trial judge. *State v. Beuke* (1988), 38 Ohio St.3d 29, 39, 526 N.E.2d 274, 285.

**{¶ 32}** In any event, the record shows that the trial judge had forbidden all prospective jurors from discussing "anything about this case with anyone else, including other prospective jurors." Thus, the court was justified in interrogating this prospective juror concerning an apparent conversation with a news reporter. The trial judge's inquiries as to whether the prospective juror had consumed alcohol were legitimate. The prosecutor also thought that he smelled alcohol.

**{¶ 33}** The exchange at issue indicates that the trial judge engaged in tough questioning, but he did not show any bias against Davie. If such a bias was obvious, defense counsel should have raised some concern at that time. The record, however, reveals no action taken by defense counsel.

**{¶ 34}** Davie's claim that exclusive use of voter registration lists in jury selection deprived him of an impartial jury representing a fair cross-section also lacks merit. Utilization of voter rolls alone to choose prospective jurors is constitutional. See, *e.g., State v. Johnson* (1972), 31 Ohio St.2d 106, 60 O.O.2d 85, 285 N.E.2d 751, paragraph two of the syllabus; *State v. Hill* (1992), 64 Ohio St.3d 313, 325-326, 595 N.E.2d 884, 895. Davie has not demonstrated an unfair lack of representation of African Americans in Trumbull County juries, nor has he shown that such alleged underrepresentation resulted from a systematic exclusion by the state of that particular group. See *State v. Puente* (1982), 69 Ohio St.2d 136, 138 23 O.O.3d 178, 179, 431 N.E.2d 987, 989.

**{¶ 35}** In proposition II, Davie contends that he was denied a fair trial when the trial judge implied that he was dangerous by requesting the jury to remain seated while deputies removed him from the courtroom.

**{¶ 36}** Given the fact that Davie failed to object to the comment, any error is waived except plain error. *State v. Slagle* (1992), 65 Ohio St.3d 597, 604, 605 N.E.2d 916, 925. The comment in issue was brief, isolated, and not prejudicial. The trial court's direction to the jury to remain seated did not rise to the level of the "constant reminder" of prison garb or shackles noted in *Estelle v. Williams* (1976), 425 U.S. 501, 504, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126, 131. Moreover, his comment fairly related to the trial court's authority to control proceedings under R.C. 2945.03. Plain error is also absent.

**{¶ 37}** Davie further contends that his rights were infringed when the trial court characterized his voluntary statement to police officers as a "confession." This characterization was made off the record. The trial judge instructed the jury that only it could determine whether Davie's statement was a confession. Thus, even assuming that the jury heard the judge refer to the statement as a confession, this court will presume that the jury followed the judge's curative instruction. *State v. DePew* (1988), 38 Ohio St.3d 275, 284, 528 N.E.2d 542, 553.

**{¶ 38}** In proposition VIII, Davie argues that the trial court denied him a fair trial by refusing to use his proposed jury questionnaire. However, this is a matter of discretion for the trial court, and no abuse of discretion occurred. *State v. Mills* (1992), 62 Ohio St.3d 357, 365, 582 N.E.2d 972, 981. Moreover, the court submitted its own questionnaire and allowed defense counsel to freely question prospective jurors during voir dire.

**{¶ 39}** In proposition X, Davie submits that the trial court erred in permitting the prosecutor to exercise peremptory challenges to two prospective jurors who expressed reservations about the death penalty. However, apart from excluding jurors based on race or gender, prosecutors can exercise a peremptory

challenge for any reason, without inquiry, and without a court's control. *State v. Seiber* (1990), 56 Ohio St.3d 4, 13, 564 N.E.2d 408, 419; *State v. Ballew* (1996), 76 Ohio St.3d 244, 253, 667 N.E.2d 369, 379. See, also, *State v. Esparza* (1988), 39 Ohio St.3d 8, 14, 529 N.E.2d 192, 198.

{¶ 40} In proposition XXV, Davie argues that the multiplicitous indictment against him for a single act of criminal conduct violates double jeopardy. Davie's double jeopardy argument is similar to the one we rejected in *State v. Grant* (1993), 67 Ohio St.3d 465, 474, 620 N.E.2d 50, 63. In *Grant,* this court upheld the constitutionality of Ohio's statutory scheme of punishment, noting that the General Assembly intended that each offense be separately punished. See, also, *State v. Guyton* (1984), 18 Ohio App.3d 101, 103-104, 18 OBR 464, 467, 481 N.E.2d 650, 653-654.

{¶ 41} Davie also alleges that use of an aggravating circumstance in Ohio's capital sentencing scheme which merely repeats an element of the underlying crime is unconstitutional. However, Ohio's capital sentencing scheme is constitutional. See *State v. Henderson* (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237, paragraph two of the syllabus.

{¶ 42} Finally, we reject Davie's claim that the trial court erred in failing to merge the three R.C. 2929.04(A)(7) specifications in each murder count prior to trial.

{¶ 43} The trial court did not err in failing to merge the specifications for kidnapping, aggravated burglary, and aggravated robbery. Here, the kidnapping took place when Davie gathered the three victims in the warehouse area, restrained them with a gun, and made them lie on the floor against their will. The aggravated burglary, Davie's entrance into the VCA premises with intent to commit a felony, was already complete prior to the kidnapping. The aggravated robbery, Davie's theft of his victims' belongings, took place after the kidnapping. See *State v.*

*Jenkins* (1984), 15 Ohio St.3d 164, 197-198, 15 OBR 311, 340, 473 N.E.2d 264, 295.

Trial Issues

{¶ 44} In proposition III, Davie asserts prejudicial error in the admission of inflammatory and gruesome photos, slides, and videotapes of the victims, as well as cumulative diagrams highlighting the numerous wounds on the victims.

{¶ 45} With respect to the photographs, the trial judge carefully reviewed each one and excluded fourteen. Although defense counsel objected to State's Exhibits 35 and 46 as repetitive, the court found that each depicted a different side of Jefferys's body. Four of the photos depicting bruises and abrasions on Jefferys's body are repetitive of several autopsy slides. However, in view of the overwhelming evidence of Davie's guilt, he was not unduly prejudiced.

{¶ 46} With respect to the autopsy slides, none of the Coleman slides is repetitive. A review of the Jefferys autopsy slides indicates that two depicting her face were repetitive, and several slides could be characterized as gruesome. However, under *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, paragraph seven of the syllabus, the probative value of the slides outweighs any prejudicial effect. The slides from both autopsies illustrated Dr. Ruiz's testimony and were probative of purpose. While the repetitive slides from the Jefferys autopsy should not have been admitted, any prejudicial impact this evidence might have had on the sentencing phase is minimized by our independent review of the sentence. *State v. Lundgren* (1995), 73 Ohio St.3d 474, 486, 653 N.E.2d 304, 318; *State v. Landrum* (1990), 53 Ohio St.3d 107, 115, 559 N.E.2d 710, 721. The prejudicial effect of the repetitive slides on the guilt phase must be considered only slight, since the properly admitted evidence of guilt was so overwhelming.

**{¶ 47}** The diagrams at issue depict the size and location of the wounds on the two murder victims. The diagrams were not repetitive or gruesome, but simply illustrate Dr. Ruiz's testimony and indicate purposefulness.

**{¶ 48}** With respect to the videotape, the trial court sustained Davie's objection and gave the state an opportunity to submit a redacted version to eliminate repetitive scenes. Davie did not object to the redacted version and, thus, waived all but plain error. A review of the redacted videotape indicates its clear probative value in illustrating the crime scene and the testimony of state witnesses who were at the scene. See *State v. Franklin* (1991), 62 Ohio St.3d 118, 126, 580 N.E.2d 1, 8. Accordingly, we reject Davie's third proposition.

**{¶ 49}** In proposition VI, Davie contends that all the statements elicited from him by the police violated his right against self-incrimination. However, when Davie was arrested at his residence by Capt. Downs shortly after the murders, he was advised of his *Miranda* rights. At approximately 9:05 that morning, at the police station, Capt. Downs asked Lt. Carl Blevins to talk with Davie, who was in an interrogation room. Lt. Blevins was joined by Det. Hill, who read Davie his *Miranda* rights. Davie initialed the rights form, but refused to sign the waiver. The officers did not question Davie further, but conducted an atomic absorption test on his hands. At no time did Davie request an attorney or indicate that he did not want to talk.

**{¶ 50}** At approximately 9:59 a.m., Downs and Blevins reentered the interrogation room and interviewed Davie after again advising him of his *Miranda* rights. Davie denied that he had refused to sign the waiver form, but had simply been told by the officers that he did not have to. Davie then informed the officers that he did not wish to make a statement, and the interview ceased.

**{¶ 51}** Later that morning, the prosecutor advised Sines that so long as Davie did not refuse to speak and did not demand an attorney, the officers could talk to him, provided that Davie acknowledged that he understood his rights.

Therefore, Sines and Vingle had Davie brought up from his jail cell after Davie agreed to come up and talk.

{¶ 52} At approximately 12:15 p.m., Davie was readvised of his *Miranda* rights and initialed each of his rights on the form, except the waiver of rights. He then signed the form, acknowledging that he understood his rights. Davie agreed to talk with the officers, and a short interview took place wherein Davie claimed that he did not remember being around the VCA that morning, but did have his gun with him. At 12:35 p.m., Davie indicated that he had nothing more to say, and the interview ceased.

{¶ 53} At approximately 2:00 that afternoon, Davie told Sgt. Massucci, who had been taking pictures of Davie, that he wished to talk to Det. Vingle. Davie was brought up from his cell and was again advised of his *Miranda* rights by Sines and Vingle. Davie again initialed all the rights, except the waiver, but signed his name on the form. Davie then told the officers that he "went down to VCA and shot 'em up." Davie also admitted taking Jefferys's car and trying to run over Everett with the truck.

{¶ 54} Contrary to Davie's arguments, he did not unequivocally assert his constitutional rights. Instead, he waived his right to remain silent during both interviews with Vingle and Sines, despite his failure to initial the waiver-of-rights portion of the form. This situation is similar to that in *State v. Scott* (1980), 61 Ohio St.2d 155, 15 O.O.3d 182, 400 N.E.2d 375, which followed the decision in *North Carolina v. Butler* (1979), 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286. In *Butler,* the Supreme Court noted that "in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." *Id.* at 373, 99 S.Ct. at 1757, 60 L.Ed.2d at 292. In *Scott,* the accused acknowledged that he understood his *Miranda* rights, but refused to sign a waiver form. Nevertheless, he agreed to answer questions and never requested counsel. The *Scott* court upheld the admissibility of the accused's statements and held, "[T]he question is not one of

form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in *Miranda* * * *." *Scott* at paragraph one of the syllabus. The similar facts of this case demonstrate that Davie waived his *Miranda* rights even though he failed to initial the waiver part of the form.

{¶ 55} When Davie indicated in his interview with Blevins and Hill that he no longer wished to talk, his requests were scrupulously honored by the officers. However, in cutting off the earlier interviews, Davie did not preclude a later interrogation by other officers. See *Michigan v. Mosley* (1975), 423 U.S. 96, 104, 96 S.Ct. 321, 326-327, 46 L.Ed.2d 313, 322. Moreover, Davie never asserted his right to have counsel present.

{¶ 56} Finally, it is clear that Davie's 2:00 p.m. conversation with police, in which he implicated himself in the murders, was properly admitted, since he initiated that conversation himself. See *Edwards v. Arizona* (1981), 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378, 387.

{¶ 57} In addition, police did not violate R.C. 2935.07, which requires that an officer making a warrantless arrest inform the person arrested of the cause of the arrest. Davie was notified of the offenses charged against him soon after he was taken into custody, when Blevins and Hill first interviewed him. *State v. Fairbanks* (1972), 32 Ohio St.2d 34, 61 O.O.2d 241, 289 N.E.2d 352, paragraph four of the syllabus. Also, R.C. 2935.05 was not violated, as there was no "unnecessary delay," since the affidavit describing the offense for which Davie was charged was taken before the trial court the morning after his arrest. For these reasons, we reject proposition VI.

{¶ 58} In proposition VII, Davie asserts that suggestive, unreliable police identification procedures presented a substantial likelihood of misidentification and thereby violated his right to due process.

{¶ 59} At trial, Donna Smith testified that on the morning of the murders she saw a black man drive a truck out of the VCA parking lot. After the truck

crashed into the bridge, a black man got out of the truck, and stared at her for about fifteen seconds from approximately forty feet away. Later that morning, Smith chose Davie's photo out of an array of six photos of black men in a procedure conducted by Sgt. Massucci. Smith made her identification in "[o]nly about thirty seconds."

{¶ 60} About a week later, Det. Sines, who was unaware of the prior array given by Sgt. Massucci, showed Smith a photo array using a newer photo of Davie. Smith selected Davie's photo as being the person she saw get out of the truck. Shortly thereafter, Sines showed Smith another six-photo array using a different, older photograph of Davie. Smith informed Sines that she had seen the same array before and that she had chosen Davie's photograph.

{¶ 61} In *Neil v. Biggers* (1972), 409 U.S. 188, 199-200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411, the court stated that in these types of cases, the crucial inquiry is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. * * * [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." See, also, *State v. Williams* (1995), 73 Ohio St.3d 153, 163, 652 N.E.2d 721, 731.

{¶ 62} Here, Smith testified that Davie stared at her for about fifteen seconds from a short distance away on a clear, sunny morning. That same morning, Smith chose Davie's photo from an array in "[o]nly about thirty seconds" as the man she saw getting out of the truck. Smith's degree of attention at the time she saw Davie that morning was high. Moreover, a week later, Smith again chose Davie's photograph from the array.

**{¶ 63}** As we held in *State v. Jells* (1990), 53 Ohio St.3d 22, 27, 559 N.E.2d 464, 470, "[t]he focus, under the 'totality of the circumstances' approach is upon the reliability of the identification, *not* the identification procedures." (Emphasis *sic*.) While the second photo array shown to Smith by Sines contained the same pictures from the photo array conducted a week earlier, it does not appear that the identification methods employed were so suggestive as to create a risk of misidentification. Under the totality of circumstances, nothing in the record indicates that Smith's identification was unreliable. We therefore reject Davie's proposition VII.

**{¶ 64}** In proposition XI, Davie claims error in the trial court's admission of irrelevant and highly inflammatory evidence of "other acts" in the guilt phase, with a prejudicial carryover effect on the penalty phase. Davie asserts that such evidence portrayed him as a "bad character" in violation of Evid.R. 404(B) and R.C. 2945.59.

**{¶ 65}** At trial, during Davie's cross-examination, the state questioned Davie about other problems he had had in school, over defense objection, including the fact that he had been expelled. The state further elicited testimony from Davie that he left his girlfriend, Sonya Barnes, to live in California when she was pregnant with his child. Davie complains that the state suggested through cross-examination that he had stalked VCA employees and broken into their houses. In addition, the state elicited from Davie the fact that he did not pay child support, even though he was employed, and that with his knowledge, Sonya collected welfare child support.

**{¶ 66}** With respect to Davie's expulsion from school, defense counsel opened the door for such cross-examination when he asked Davie about his expulsion on direct examination. As far as the questions concerning Davie's move to California and Sonya's receipt of welfare child support with his knowledge, the defense failed to object to such inquiries and thus waived all but plain error. *Slagle, supra*, 65 Ohio St.3d at 604, 605 N.E.2d at 925. However, no prejudicial outcome-

determinative error occurred. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus.

{¶ 67} The trial court sustained an objection to the question concerning Davie's alleged stalking of VCA employees. However, Davie requested no curative instruction and thus cannot now complain that none was given. Moreover, Davie did not challenge at trial the prosecutor's good-faith basis for the query. See *State v. Gillard* (1988), 40 Ohio St.3d 226, 231, 533 N.E.2d 272, 278.

{¶ 68} Given the abundant evidence of Davie's guilt, any error asserted under this proposition was harmless and nonprejudicial. See *State v. Williams* (1983), 6 Ohio St.3d 281, 6 OBR 345, 452 N.E.2d 1323, paragraphs three and six of the syllabus. Our independent review will readily cure any carryover effect of these alleged errors to the penalty phase. See *State v. Lott* (1990), 51 Ohio St.3d 160, 170, 555 N.E.2d 293, 304. Accordingly, we overrule proposition XI.

{¶ 69} In proposition XII, Davie asserts that the state improperly impeached its own witness, Sonya Barnes, with a prior inconsistent statement, violating Evid.R. 607.

{¶ 70} Under Evid.R. 607, a party may not impeach its own witness with a prior inconsistent statement without showing surprise and affirmative damage. Here, the prosecution sufficiently showed surprise and affirmative damage, since Barnes's trial testimony varied from her grand jury testimony and her statement to police on the day of the murders. At trial, when defense counsel objected to the prosecution's use of Barnes's prior statement, the trial judge ruled that Barnes's testimony was adverse to the prosecution.

{¶ 71} The requirements of Evid.R. 607 were met. The prosecution had no reason to believe Barnes would testify as she did at trial, since her prior statements to police and the grand jury were consistent. Thus, the element of surprise was established. Affirmative damage to the prosecution was present because the state's position was that Davie was solely responsible for the murders. Barnes's trial

testimony, however, implied that "Styx" Thomas was involved and had threatened Davie into taking responsibility for the crimes. Under these circumstances, the trial court did not abuse its discretion in permitting the state to use Barnes's prior statements to impeach her trial testimony.

**{¶ 72}** In proposition XIII, Davie argues that the trial court erred in failing to instruct the jury that it must specifically determine which of the three felonies, as they related to counts three and four of the indictment, Davie was guilty of committing. Davie also contends that the court erred in instructing the jury that its verdicts must be consistent.

**{¶ 73}** Davie failed to object to the instructions at issue and, therefore, waived all but plain error. *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus. Moreover, the state elected at the beginning of the penalty phase to dismiss Davie's convictions on counts three and four, thus rendering this issue moot. In addition, since the jury found Davie guilty of all the underlying felonies, any error in the court's instruction was harmless and nonprejudicial.

**{¶ 74}** With respect to Davie's second argument under this proposition, the court instructed the jury as follows:

"Now, the verdicts returned by you should be complete and consistent. * * *

"Let me call your attention again, if you find the Defendant not guilty of the first count of aggravated murder, just as an example, further verdicts on the specifications are not necessary. You only go to the specification, if you make a finding of guilty on any of the five counts. If you have any doubt as to the consistency or completeness of your verdicts, after you have had an opportunity to arrive at one, and you wish to return to the courtroom, you should feel free to inquire of the Court as to the completeness or consistency of such verdicts."

**{¶ 75}** The foregoing instruction did not require the jury to return consistent verdicts. Instead, it appears that the trial judge was simply and accurately telling

the jury that it was unnecessary to vote on the specifications if it found appellant not guilty on the underlying charge. No error exists.

**{¶ 76}** In proposition XIV, Davie contends that the court issued an "acquittal first" instruction that was biased in favor of conviction on the greatest charge. The trial court instructed the jury:

"Also, with regard to the third and fourth Counts, I'll now instruct you as to the lesser included offense of involuntary manslaughter. As I have previously stated, if you find that the State has proven beyond a reasonable doubt each and every essential element of the crimes charged in those Counts, then your verdict must be guilty as to that particular count.

"If on the other hand, you find that the State has not proven beyond a reasonable doubt, each and every element of either or both of those Counts, then your verdict must be not guilty as to that particular Count; in that event, and only in that event, you will continue your deliberations to decide whether the State has proven beyond a reasonable doubt all of the essential elements of the lesser included offense of involuntary manslaughter as to that particular Count."

**{¶ 77}** Davie failed to object and thus waived all but plain error. *Underwood, supra*, 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus. Moreover, Davie was not prejudiced by the instruction, since any error was rendered moot when the state dismissed Davie's convictions on counts three and four. Accordingly, we reject proposition XIV.

**{¶ 78}** In proposition XV, Davie objects to the jury instruction based on the statutory definition of "reasonable doubt" (R.C. 2901.05). However, we summarily reject that argument. *State v. Frazier* (1995), 73 Ohio St.3d 323, 330, 652 N.E.2d 1000, 1008; *State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568, syllabus.

**{¶ 79}** In proposition XVI, Davie argues that there is insufficient evidence to establish that he committed an aggravated burglary by stealth.

**{¶ 80}** When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573-574; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not have reached the conclusion reached by the trier of fact. *Id.* at 273, 574 N.E.2d at 503.

**{¶ 81}** At trial, the evidence indicated that there were three bays in the VCA loading dock area. Two were in use with trucks, but in the third one, the garage door was open about halfway. A broken-in window, near the entrance of the VCA, may have been used to gain entrance to the facility. In addition, Everett testified that Davie "wasn't allowed in the building and I knew the door was locked, so I didn't know how he got in the building."

**{¶ 82}** Construing this circumstantial evidence in a light most favorable to the state, a rational factfinder could have found that Davie entered the VCA by stealth. Since there was sufficient evidence to support Davie's aggravated burglary conviction, proposition XVI is overruled.

**{¶ 83}** Davie claims in proposition XVII that the trial court abused its discretion in admitting two predeath photographs of the victims, as well as character and background evidence of the victims, including Everett. Davie contends that the predeath photos were not relevant and were introduced solely to inflame and prejudice the jury.

**{¶ 84}** In accordance with *State v. Roe* (1989), 41 Ohio St.3d 18, 22-23, 535 N.E.2d 1351, 1358, the predeath photos of the two murder victims were relevant and probative for identification purposes. The trial court did not abuse its discretion in admitting these photos under *Jenkins, supra*, 15 Ohio St.3d at 222, 15 OBR at 361, 473 N.E.2d at 313.

{¶ 85} Davie next complains that it was error to allow Everett to testify about Jefferys's and his own background and character. However, Everett's testimony was innocuous. Everett testified that he was thirty years old, attended Warren G. Harding High School, and lived with his mother. Everett also responded to questions about Jefferys's age and height. Davie waived any error by not objecting, and plain error is clearly absent.

{¶ 86} Davie also argues that the state improperly referred to the good character of the murder victims and their right to live during both phases of the trial. However, Davie does not specifically cite any such statement in the guilt phase closing argument, and we cannot find one there.

{¶ 87} The statement Davie complains of from the penalty phase was not objected to; his claim of error is therefore waived. Moreover, this statement does not constitute error. Contrary to Davie's assertions, the remark did not refer to the good character of the victims or their right to live. Accordingly, proposition XVII is not well taken.

{¶ 88} In proposition XVIII, Davie contends that he was denied his right to a jury trial when the trial court changed the wording on the verdict form after the jury verdict had been rendered. The verdict form for count nine, entitled "Indictment for Aggravated Robbery," read as follows:

"We, the Jury in this case, duly empaneled and sworn or affirmed, find the Defendant, Roderick Davie, _____ of *kidnapping* in that he did, in attempting or committing a theft offense, have a deadly weapon, to wit: a .38 caliber handgun, on or about his person and did inflict serious physical harm on Tracy [*sic*] Jefferys, in the manner and form as he stands charged in the ninth count of the indictment." (Emphasis added.)

{¶ 89} The jury filled in the blank with the word "Guilty." The discrepancy between the title of the form and the body of the form was not discovered until after the verdict was announced in court. The trial judge then brought counsel for the

parties into his chambers to discuss the error on the form. The prosecution moved to amend the form and argued that the elements of the charge on the form were clearly those for aggravated robbery. Defense counsel asked the court to declare the verdict void and set it aside. The court then allowed the state's motion to amend "by interlineation of the word 'kidnapping,' to read 'Aggravated Robbery' " over defense's objections.

{¶ 90} The sole case on point in Ohio for this type of situation is *State v. English* (1985), 21 Ohio App. 3d 130, 21 OBR 138, 486 N.E.2d 1212. In *English*, the jury was instructed on aggravated burglary, but the jury was given the verdict form for burglary instead. The jury found the defendant guilty and was discharged. When the error was discovered, the trial court then, in effect, amended the verdict and sentenced the defendant for aggravated burglary over defense objection. The court of appeals reversed the conviction for aggravated burglary, but did not disturb the verdict of guilty of burglary.

{¶ 91} The better practice in the instant case would have been for the trial court to reconvene the jury to redeliberate on count nine. Nevertheless, as pointed out by the court below, a careful reader of the entire verdict form would notice that "kidnapping" was not the correct word. In *English*, there was nothing on the verdict form that would alert the reader to any discrepancy.

{¶ 92} Since Davie was not prejudiced by the court's amendment, the action of the trial court did not amount to an abuse of discretion. *Jenkins, supra*, 15 Ohio St.3d at 222, 15 OBR at 361, 473 N.E.2d at 313. Therefore, we overrule proposition XVIII.

{¶ 93} In proposition XXIV, Davie asserts that his conviction and sentence on aggravated burglary and on the aggravated robbery of Jefferys were against the manifest weight of the evidence. This argument must fail, since this court does not ordinarily evaluate the manifest weight of the evidence in cases evaluated by courts of appeals. See *State v. Tyler* (1990), 50 Ohio St.3d 24, 33, 553 N.E.2d 576, 589,

quoting *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652, 661-662.

Penalty Phase Issues

**{¶ 94}** In proposition IX, Davie contends that the trial court erred in instructing the jury in voir dire and in the penalty phase that its verdict was only a recommendation. The term "recommendation," however, does not diminish the jury's sense of responsibility, accurately reflects Ohio law, and does not constitute error. See, *e.g., State v. Woodard* (1993), 68 Ohio St.3d 70, 77, 623 N.E.2d 75, 80-81; *State v. Buell* (1986), 22 Ohio St.3d 124, 143-144, 22 OBR 203, 219-220, 489 N.E.2d 795, 812-813.

**{¶ 95}** In proposition XIX, Davie argues that the trial court erred in excluding certain mitigation evidence. During the penalty phase, Dr. John Kenny testified as to the effects of a head injury sustained by Davie when he was eighteen years old. Dr. Kenny opined that Davie suffered from postconcussion syndrome. Upon further questioning by defense counsel, the trial court sustained the state's objection. A sidebar between counsel and the judge took place off the record, and when court reconvened, defense counsel pursued a different topic of questioning.

**{¶ 96}** Davie contends that under R.C. 2929.04(C), a defendant is accorded great latitude in presenting evidence on statutory mitigating factors. Davie submits that the trial court's refusal to permit his line of questioning denied him the right to an individualized determination of an appropriate sentence.

**{¶ 97}** Davie's arguments are without merit. Evid.R. 103(A) provides that error may not be predicated upon a ruling which excludes evidence unless it affects a substantial right of the party *and* the substance of the excluded evidence was made known to the court by proffer *or* was apparent from the context within which the questions were asked. *State v. Gilmore* (1986), 28 Ohio St.3d 190, 28 OBR 278, 503 N.E.2d 147, syllabus. Here, Davie made no proffer, and the substance of the

23

excluded evidence was not apparent from the context in which it was given. Accordingly, proposition XIX lacks merit.

{¶ 98} In proposition XX, Davie argues that the sentencing phase instructions permitted the jury to consider and weigh the nature and circumstances of the crime itself as a nonstatutory aggravating circumstance. However, Davie did not object to the instructions and has thus waived all but plain error. *Underwood, supra*, 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus.

{¶ 99} Davie cites the following portion of the jury instructions in the penalty phase as raising a nonstatutory aggravating circumstance: "The nature and circumstances of the aggravated murder are relevant only insofar as they may relate to any mitigating factors alleged by the Defendant, or any of the aggravating circumstances pertaining to the first count regarding the death of John Ira Coleman for which the Defendant was found guilty." The trial court gave the same instruction concerning the death of Tracey Jefferys in count two.

{¶ 100} Here, the court instructed the jury prior to the above passage that the aggravating circumstances "are precisely as set out in the specifications contained in the verdict forms on these specifications." The court then set out each of the four aggravating circumstances and stated that "[a] homicide itself is not to be considered aggravated circumstance — an aggravating circumstance."

{¶ 101} Since the jury instruction accurately set forth the aggravating circumstances to be considered by the jury in its weighing process, any error was nonprejudicial. Moreover, the facts and circumstances are relevant to the aggravating circumstances. See *State v. Wogenstahl* (1996), 75 Ohio St.3d 344, 352-356, 662 N.E.2d 311, 319-322.

{¶ 102} Davie contends in proposition XXI that the trial court failed to comply with R.C. 2929.03 in its sentencing opinion. In addition, Davie argues that the trial court improperly considered nonstatutory aggravating factors in its opinion imposing the death sentence.

**{¶ 103}** A review of the sentencing opinion reveals that Davie's assertions are without merit. The trial judge complied with R.C. 2929.03(F) by making specific findings in the four areas enumerated therein. Davie claims that the trial judge erred in referring to the nature and circumstances of the murders and thus transformed them into nonstatutory aggravating circumstances. However, the trial court did not do that. The court simply relied upon and cited the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances are sufficient to outweigh the mitigating factors. *State v. Stumpf* (1987), 32 Ohio St.3d 95, 512 N.E.2d 598, paragraph one of the syllabus, permits this. Moreover, the court is required to review the nature and circumstances in order to determine whether the death penalty is appropriate. *State v. Jester* (1987), 32 Ohio St.3d 147, 153, 512 N.E.2d 962, 969.

**{¶ 104}** Davie's criticisms of the court's explanations of its weighing process are also unpersuasive. Even inadequate explanations of why the aggravating circumstances outweigh the mitigating factors do not necessarily create reversible error. See *State v. Fox* (1994), 69 Ohio St.3d 183, 190-192, 631 N.E.2d 124, 130-131.

**{¶ 105}** In any event, even assuming that any of Davie's claims raise legitimate points, this court's independent review will readily cure any such errors. *Id.; Lott*, *supra*, 51 Ohio St. 3d at 170, 555 N.E.2d at 304.

**{¶ 106}** In proposition XXII, Davie contends that the trial court was wholly without authority to impose imprisonment to be served consecutively to a death sentence. However, we have rejected this argument in *State v. Campbell* (1994), 69 Ohio St.3d 38, 52, 630 N.E.2d 339, 352, and *State v. Bies* (1996), 74 Ohio St.3d 320, 325, 658 N.E.2d 754, 760.

**{¶ 107}** In proposition XXVI, Davie contends that the proportionality review process of R.C. 2929.05 does not comport with constitutional requirements. This argument lacks merit. *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273,

509 N.E.2d 383, paragraph one of the syllabus, and at 122-124, 31 OBR at 283-284, 509 N.E.2d at 394-395.

{¶ 108} In proposition XXVIII, Davie argues, that for various reasons, the death penalty is inappropriate in this case, a matter we will consider in our independent assessment of the sentence.

Prosecutorial Misconduct

{¶ 109} In proposition IV, Davie asserts that the prosecutor repeatedly engaged in improper arguments and comments throughout all phases of trial.

{¶ 110} Davie first mentions comments in which he claims that the prosecutor aligned himself with "truth and justice." However, Davie failed to object and therefore waived all but plain error. *Slagle, supra*, 65 Ohio St.3d at 604, 605 N.E.2d at 925. The comments about truth and the justice system were largely innocuous. While the penalty phase comments may have been a bit embellished, they were not outcome-determinative or unduly prejudicial.

{¶ 111} With respect to the second group of comments, Davie claims that the prosecutor focused repeatedly on the horror of the crime rather than the evidence. Davie asserts that the prosecutor inflamed the jury by using gruesome photographs to direct attention to the brutality of the crimes. Once again, Davie failed to object to comments he complains of now. While a conviction based solely on inflamed passions, rather than proof of guilt, requires reversal, *State v. Williams* (1986), 23 Ohio St.3d 16, 20, 23 OBR 13, 17, 490 N.E.2d 906, 911, it is clear that even absent these remarks, the jury would have found Davie guilty. See *Beuke, supra*, 38 Ohio St.3d at 33, 526 N.E.2d at 280. Moreover, the prosecutor's comments were fair and based on properly admitted evidence. See *State v. Gumm* (1995), 73 Ohio St.3d 413, 420, 653 N.E.2d 253, 262.

{¶ 112} In the third group, Davie contends that the prosecutor denigrated both defendant and defense counsel. However, Davie objected to only one comment cited: "The defense has been classical. It's the wait and see defense.   *

* * The Defense has waited and has seen from the evidence what the State had  * * *.”  The trial court sustained the objection as to the phrase “classical defense.”  The other comments pointed out by Davie do not amount to plain error:  (1) “This isn't an intellectual game of being cute.”  (2) “* * * [A]nd this is before the supposedly blood loss defense.  It's malarkey.”  (3) “[I]t's another part of the smoke screen justice in this case.”  (4) “If you can believe that, honestly, I think that maybe, just maybe, Roseanne can sing the National anthem.  It's absolutely ridiculous.”  (5) “[H]e has no empathy * * * .  [H]e doesn't have any feelings or a conscience.”  (6) “[W]e first had the mistaken identity plot, and then we get into now, the post-concussion syndrome, come on.”  (7) “He's a sociopath.  He doesn't feel.  He doesn't have a conscience.”

{¶ 113} While some remarks arguably exceeded the bounds of propriety, they were not outcome-determinative, either individually or collectively.  *Long, supra*, 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus.  None of these remarks rises to the level of misconduct or prejudice that we found in *State v. Keenan* (1993), 66 Ohio St.3d 402, 406, 613 N.E.2d 203, 206-207.  The comments alleged to be the prosecutor's expression of his personal beliefs were permissible, since they were based on the evidence presented during the penalty phase.  See *State v. Durr* (1991), 58 Ohio St.3d 86, 96, 568 N.E.2d 674, 684.

{¶ 114} In the last group, Davie alleges that the prosecutor argued improper law to the jury:  (1) “In short, this Defendant is eligible for the death penalty eight times over.”  (2) “[A] specification of mass murder and multiple murder.”  (3) “But what does he do?  And this takes a considerable period of time.  This course of conduct to take human life, and also after repeatedly beating this poor woman to death.  Then attempts two other times to kill John Everett.  That is aggravating circumstances.”  (4) “He kidnapped these people, and by gunpoint, terrorized them.

That is aggravating circumstances." The defense objected to the second and third comments, but did not object to the first and fourth.

{¶ 115} The third statement is erroneous under *State v. Landrum* (1990), 53 Ohio St.3d 107, 112, 559 N.E.2d 710, 719. The manner of killing is not a statutory aggravating circumstance. However, the court's instructions to the jury, correctly specifying the statutory aggravating circumstances to be considered, ameliorated any prejudice to Davie.

{¶ 116} The implication in the second statement above, that there is a "mass murder" specification in addition to a multiple murder specification, was also remedied by the court's jury instructions. Any prejudicial impact is minimized by our independent review. *Lundgren, supra*, 73 Ohio St.3d 474, 653 N.E.2d 304.

{¶ 117} The statements not objected to do not amount to plain error. The "eight times over" comment was embellished, but theoretically accurate. The last comment was accurate in the total given context: kidnapping is an aggravating circumstance. Since none of these remarks prejudicially affected substantial rights of the accused, *State v. Smith* (1984), 14 Ohio St.3d 13, 14-15, 14 OBR 317, 318-319, 470 N.E.2d 883, 885-886, proposition IV is not well taken.

{¶ 118} In proposition V, Davie contends that the trial court erred in allowing the prosecutor to comment repeatedly that Davie's forensic expert witness did not testify. Davie asserts that such comments clearly violate Crim.R. 16(C)(3), as held by this court in *State v. Hannah* (1978), 54 Ohio St.2d 84, 90, 8 O.O.3d 84, 88, 374 N.E.2d 1359, 1363-1364.

{¶ 119} Once again, Davie's failure to object to two of the three comments waives all but plain error. *Slagle, supra*, 65 Ohio St.3d at 604, 605 N.E.2d at 924-925. However, the prosecutor's comments do not constitute error in any event. *Hannah* is readily distinguishable, and the Criminal Rule is inapplicable, since Davie supplied no witness list containing the appointed forensic expert's name. Moreover, the state did not request such a witness list during discovery pursuant to

the Criminal Rule. Additionally, comments that a witness other than the accused did not testify are not improper. See *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 193, 616 N.E.2d 909, 916. Therefore, proposition V is without merit.

Effective Assistance

{¶ 120} Davie asserts in proposition XXIII that he was denied effective assistance of trial counsel and lists twenty-three instances where counsel was ineffective.

{¶ 121} Reversal of a conviction on the grounds of ineffective assistance requires that defendant show, first, that counsel's performance was deficient, and second, that the deficient performance prejudiced the defense so as to deprive defendant of a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. However, Davie has not demonstrated prejudice, "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.

{¶ 122} Ten of the instances cited by Davie have been discussed in other propositions of law. None of these alleged errors prejudiced Davie.

{¶ 123} The remaining thirteen instances also do not constitute ineffective assistance. Counsel's decision not to give an opening statement in the penalty phase could be characterized as a reasonable trial strategy, since the prosecution also declined to give one. See *id.* at 144, 538 N.E.2d at 381-382.

{¶ 124} Davie next complains that counsel failed to object to hearsay, inadmissible character evidence, other speculative and emotional testimony, and erroneous evidentiary rulings. Davie further objects to counsel's failure to request an instruction to the jury to disregard testimony that was successfully challenged. However, none of the instances cited by Davie was prejudicial. In addition, objections " 'tend to disrupt the flow of trial' " and " 'are considered technical and bothersome.' " *Campbell, supra*, 69 Ohio St.3d at 53, 630 N.E.2d at 352, quoting

Jacobs, Ohio Evidence (1989) iii-iv. Counsel's decision not to interrupt in these contexts reflected an "objective standard of reasonable representation." *Bradley, supra*, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. See, also, *State v. Holloway* (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831, 837.

{¶ 125} Davie concedes that he cannot show prejudice by counsel's failure to move for a separation of witnesses earlier. Counsel's failure to object to comments regarding the motion to suppress Donna Smith's identification and to comments on defendant's statements was also nonprejudicial.

{¶ 126} Counsel's failure to seek fees to pay for an eyewitness identification expert did not, as Davie alleges, demonstrate a failure to investigate "every possible theory of innocence." Such a decision did not determine the outcome of the trial, especially in view of the overwhelming evidence of Davie's guilt.

{¶ 127} Davie also concedes that he cannot show how he was prejudiced by trial counsel's failure to insist on defendant's presence in off-the-record discussions, or by counsel's failure to make a complete appellate record. Acts or omissions by trial counsel which cannot be shown to have been prejudicial may not be characterized as ineffective assistance.

{¶ 128} Counsel's failure to request transcripts of the grand jury testimony or to object to or test the qualifications of the expert testifying about blood splatters does not appear to be prejudicial. Nor is Davie able to prove how these alleged errors prejudiced his case. Counsel's failure to object to exhibits used but not admitted by the prosecution does not constitute ineffective assistance. Nor does Davie show deficient performance by counsel in failing to object to the prosecutor's "breaking up his closing argument in the guilt phase" with a ten-minute break.

{¶ 129} Last, Davie's complaint over counsel's failure to object to the denigration of defendant and the defense was reviewed under proposition IV. None of the instances pointed out by Davie, either individually or collectively,

undermined the reliability of the trial's result. Davie's assertion that counsel failed to object to comments regarding defendant's silence on certain matters is not borne out in the record, since none of the citations supports his argument that the prosecutor even made such comments. Based on all the foregoing, proposition XXIII is overruled.

Constitutionality

{¶ 130} In proposition XXVII, Davie raises several arguments alleging that Ohio's statutory death penalty scheme is unconstitutional. However, the same constitutional arguments have been raised before, and all have been rejected. See *Jenkins, supra*, 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264; *Maurer, supra*, 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768; *State v. Buell* (1986), 22 Ohio St.3d 124, 22 OBR 203, 489 N.E.2d 795; *Hill, supra*, 64 Ohio St.3d 313, 595 N.E.2d 884; *State v. Loza* (1994), 71 Ohio St.3d 61, 641 N.E.2d 1082.

Independent Sentence Assessment

{¶ 131} After independent assessment, we find that the evidence supports beyond a reasonable doubt that Davie murdered John Coleman and Tracey Jefferys with prior calculation and design. The evidence also supports beyond a reasonable doubt the aggravating circumstances that Davie murdered Coleman and Jefferys and attempted to kill Everett as part of a course of conduct involving the purposeful killing or attempt to kill two or more persons. R.C. 2929.04(A)(5). In addition, the evidence supports beyond a reasonable doubt that Davie murdered Coleman and Jefferys while committing aggravated robbery, aggravated burglary, and kidnapping. R.C. 2929.04(A)(7).

{¶ 132} The nature and circumstances of the offense are not mitigating. On the morning of June 27, 1991, Davie went to the business premises of VCA, from which he had been fired, and made an unauthorized entry while carrying a gun. He rounded up the three VCA employees present that morning and shot two of them, killing one instantly. When his gun ran out of bullets, he chased down the office

secretary and bludgeoned her to death. When Everett was able to escape the scene, even though he had been shot, Davie tried to run him over with a VCA truck. Before he fled the scene, Davie robbed two of his victims.

{¶ 133} Davie's history, character, and background provide very little in mitigation. Davie grew up in a relatively stable, supportive home environment as the youngest of four children. Davie did have difficulties living up to the example set by his older siblings, but he was neither ignored nor abused in any way as he grew up. Davie's parents did experience some marital difficulties around the time Davie became a teenager, and it was at this time that Davie began getting into trouble at school. Davie's problems at school involved behavior difficulties, possession of marijuana, and fighting, which resulted in numerous suspensions. At age fifteen and sixteen, Davie "seemed to fall into a rather deviant peer group." He had also been charged with two or three juvenile offenses that involved receiving stolen property or theft. He was expelled from school the second time he was caught with marijuana, and then attempted suicide by overdosing on his father's pain medication.

{¶ 134} On the other hand, Davie's father, William Davie, testified that as the youngest child, Davie did not get the attention his other three siblings received. He further testified that Davie was good in sports and had a very close relationship with his daughter Paris. The father stated that Davie was more like a mother than a father to Paris, because they were very close, and he would have her with him whenever he had time.

{¶ 135} Two psychologists, Dr. John Kenny and Dr. James L. Brown, also testified on Davie's behalf. Dr. Kenny opined that Davie suffered from postconcussion syndrome that arose from a head injury he sustained when he was struck on the back of the head with a baseball bat at age eighteen. Davie and girlfriend Sonya Barnes had reported to Dr. Kenny that since the injury, Davie was prone to forgetfulness, irritability, mood swings, and "blowing up." However, Dr.

Kenny testified that Davie's performance on tests measuring cognitive functioning was in the normal range, but that he had a difficult time organizing information that came to him rapidly. Dr. Kenny stated that Davie seemed to know right from wrong and displayed no evidence of mental illness or psychosis.

{¶ 136} Dr. Brown diagnosed Davie as suffering from a conduct disorder, and concurred in Dr. Kenny's diagnosis of Davie's postconcussion syndrome. Dr. Brown stated that Davie has a strong personality trait of impulsiveness and low frustration tolerance, which means he cannot stay on one job or task very well. Dr. Brown placed Davie's I.Q. at eighty-two, a drop of four points from when he was tested at age fourteen.

{¶ 137} With regard to the mitigating factors in R.C. 2929.04(B), Davie's postconcussion syndrome and conduct disorder do not rise to the level of a mental disease or defect under factor R.C. 2929.04(B)(3). See *State v. Brooks* (1986), 25 Ohio St.3d 144, 155-156, 25 OBR 190, 200, 495 N.E.2d 407, 417.

{¶ 138} Factor (4) is entitled to weight, since Davie was nineteen years old at the time of the offenses.

{¶ 139} Factor (5) also deserves some weight in mitigation, since Davie lacked a significant criminal history. While Davie was expelled from school when he was found with marijuana for a second time, there is no evidence that he was criminally charged as a juvenile for this offense.

{¶ 140} Nevertheless, upon independent weighing, we find that the statutory aggravating circumstances in this case, the purposeful killing of two persons while committing aggravated robbery, aggravated burglary, and kidnapping, outweigh the mitigating factors beyond a reasonable doubt. There is absolutely nothing mitigating in the nature and circumstances of the offense—the evidence and circumstances portray a horrific course of criminal conduct by Davie at his former job against three innocent people, two of whom had considered Davie to be their friend. Everett's testimony indicates that Coleman fell prey to Davie's

murderous intent merely because Coleman worked for VCA. The utter brutality Davie inflicted on Tracey Jefferys was staggering. Davie's pursuit of Everett seemed to indicate that he wanted no one alive to bear witness to his criminal rampage. The remaining statutory mitigating factors offer little weight. The aggravating circumstances in the murders of Coleman and Jefferys plainly outweigh the mitigating factors in this case. Davie's actions in these crimes merit the capital penalty to which he was sentenced.

{¶ 141} The death penalty in this case is both appropriate and proportionate when compared with similar cases of murder as a course of conduct involving the purposeful killing or attempt to kill two or more persons. See, *e.g., Loza, supra*, 71 Ohio St.3d 61, 641 N.E.2d 1082; *Lundgren, supra,* 73 Ohio St.3d 474, 653 N.E.2d 304. The penalty is also appropriate when compared with capital cases combining murder with kidnapping, see, *e.g., Gumm, supra*, 73 Ohio St.3d 413, 653 N.E.2d 253; *State v. Scudder* (1994), 71 Ohio St.3d 263, 643 N.E.2d 524; murder with aggravated burglary, see, *e.g., Wogenstahl, supra*, 75 Ohio St.3d 344, 662 N.E.2d 311; *Campbell, supra*, 69 Ohio St.3d 38, 630 N.E.2d 339; and murder with aggravated robbery, see, *e.g., State v. Green* (1993), 66 Ohio St.3d 141, 609 N.E.2d 1253; *Lott, supra*, 51 Ohio St.3d 160, 555 N.E.2d 293.

{¶ 142} Accordingly, we affirm appellant's convictions and sentence of death.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

————————————