OPINION
Defendant, Edward King, appeals from his conviction and sentence for aggravated robbery and kidnapping with firearm specifications.
At approximately 10:00 p.m. on April 3, 2000, Dayton police were dispatched to the Econolodge motel on Edwin C. Moses Boulevard on report of a robbery. At about that same time, the manager of the McDonalds restaurant next to the motel called police about a suspicious vehicle in their parking lot, a tan or gold Buick Riviera with license number BAF6418. The vehicle was unoccupied when police arrived, but the McDonald's manager told police he had seen two African-American males inside. Police checked the license plate number and discovered that Defendant King was the registered owner of the vehicle.
Police determined that a robbery had occurred at the Econolodge motel shortly before. Three people were in the motel lobby at the time of the robbery: Mr. Thakkar, the manager, and Mr. and Mrs. Sheth, prospective buyers of the motel. Shortly before 10:00 p.m. as the Sheths approached the lobby doors on their way out of the motel, two African-American males entered the lobby. Both men were armed with guns with laser sights. One man wearing a dark sweatshirt announced that it was a stick-up and jumped behind the check-in counter where Mr. Thakkar was working. The other man, who wore a yellow sweatshirt, pointed his gun at the Sheths and ordered them to get on the floor. He threatened to shoot them if they did not comply.
The man who went behind the counter demanded money from Mr. Thakkar, who put money from his cash drawer into a plastic bag the man held open. During the robbery the man who wore the yellow shirt fired his gun in the direction of the check-in counter. Mr. Sheth observed smoke coming from the gun, and he later discovered a hole in the wall. The two robbers fled from the motel with the stolen money and ran toward the McDonald's parking lot. They got into an older tan or cream colored car with spoke wheels and drove off down Dryden Road. Mr. Sheth later identified Defendant's vehicle as the getaway car.
At approximately 1:00 a.m., on April 4, 2000, Dayton police located the vehicle the robbers had used parked in front of Defendant's home at 1320 Treischman. Police also learned that there was an outstanding warrant for Defendant's arrest.
At approximately 6:30 a.m. Dayton police knocked on the door to Defendant's apartment. Defendant's wife answered the door and allowed the officers to come inside. At their request, Mrs. King got Defendant out of bed. Officers observed a brand new laser sight, still in its unopened package, in the apartment. Defendant admitted the suspect vehicle was his and agreed to accompany the officers to the police station for further questioning. Mrs. King told police that Defendant had briefly left the apartment that night between 9:00 and 10:00 p.m.
Police returned to Defendant's residence later that morning and obtained Mrs. King's permission to search the apartment. Mrs. King gave police a yellow sweatshirt she had found in the trash. Mrs. King also gave police a black sweatshirt she had found, as well as two BB guns. Mrs. King later asked one of her neighbors to hide a gun for her.
Mr. Sheth and Mr. Thakkar described the robbers for police as two African-American males, about twenty-one years of age, average height, 5'6"-5'9", medium build, clean shaven with short hair. They said that one of the men wore a dark sweatshirt and the other wore a yellow sweatshirt. Mr. Sheth identified Defendant from a photospread as the robber who wore the yellow sweatshirt. Both victims identified the yellow sweatshirt and black sweatshirt taken from Defendant's apartment as clothing worn by the robbers., Defendant was indicted on one count of aggravated robbery, R.C. 2911.01(A)(1), and two counts of kidnapping, R.C. 2905.01(A)(2). Firearm specifications were attached to all three charges. R.C. 2941.145. Prior to trial Defendant filed a motion to suppress his identification by Mr. Sheth from a photospread, the physical evidence seized from Defendant's apartment, and the statements Defendant made to police. Following a hearing the trial court overruled Defendant's motion to suppress in its entirety.
A jury subsequently found Defendant guilty of all charges and specifications. The trial court sentenced Defendant to consecutive terms of imprisonment totaling seven years, and added one three year term for the merged firearm specifications, for a total of ten years., Defendant timely appealed to this court from his conviction and sentence. Defendant's appellate counsel filed an Anders brief, Anders v.California (1967), 386 U.S. 738, asserting that he could not find anymeritorious issues for appellate review. Upon our examination of therecord we discovered four arguable, non-frivolous issues.
 Accordingly, we appointed new appellate counsel for Defendant andinstructed counsel to brief those arguable issues.
 FIRST ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE THAT POLICE SEIZED DURING A WARRANTLESS SEARCH OF HIS RESIDENCE."
 Defendant argues that the trial court should have suppressed theevidence police recovered from his apartment, the clothing worn by theperpetrators of this robbery, because the State failed to prove thatDefendant's wife had consented to the warrantless search of thatapartment.
 The Fourth Amendment prohibits warrantless searches and seizures bypolice. However, police officers do not need a search warrant when aperson who is authorized to do so voluntarily consents to a search,because consent is a decision to waive the rights which the FourthAmendment confers. The State bears the burden of proving that theconsent was freely and voluntarily given, and not the product of duressor coercion. Schneckloth v. Bustamonte (1973), 412 U.S. 218. Proof ofconsent must be by clear and convincing evidence. Bumper v. NorthCarolina (1968), 391 U.S. 543. When making that determination the trialcourt must examine the totality of the facts and circumstances. Id.Mere acquiescence to a claim of lawful authority is not voluntaryconsent. Bumper, supra., Defendant's wife testified at the suppressionhearing that when Det. Myers was at the apartment the first time on April4, 2000, he told her he would return with a search warrant. Later, whenDet. Myers returned, he told Defendant's wife that her husband had beencharged with armed robbery and he and the other officers were there tosearch. As Det. Myers said this he held up some papers. In fact, nowarrant was then issued. Defendant argues that his wife did notvoluntarily consent to a search of their apartment, but rather assumedthat police had a search warrant and merely acquiesced to that claim oflawful authority.
 The State presented testimony by several police officers, includingDet. Myers. They testified that when police returned to Defendant'sapartment for the second time on April 4, 2000, Defendant's wife met theofficers at the door and let them inside. Defendant's wife voluntarilygave the officers a yellow sweatshirt they were seeking, saying she hadfound it in the trash and had saved it for them. When police asked ifthey could search the apartment, Defendant's wife gave her permission.She was very cooperative and retrieved the items police requested,including a black sweatshirt and two BB guns. According to theofficers, they did not tell Defendant's wife that they had a searchwarrant, nor did they imply by their conduct that they had one.Moreover, no threats or promises were made to Defendant's wife in orderto obtain her consent for the search.
 In a motion to suppress hearing, the credibility of the witnesses andthe weight to be given to their testimony are matters for the trial courtto resolve. State v. Fanning (1982), 1 Ohio St.3d 19; State v.Satterwhite (1997), 123 Ohio App.3d 322. The testimony of the policeofficers in this case, if believed, is sufficient to establish thatDefendant's wife voluntarily consented to a search of the apartment. Asa resident of that location, she was authorized to give consent. Theconflict in the evidence created by the testimony of Defendant's wifethat she allowed police to search only because they represented that theyhad a search warrant was a matter for the trial court to resolve, whichit did in favor of the State and against the Defendant. There is no basisfor us to disturb that determination.
 The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED WHEN IT OVERRULED DEFENDANT-APPELLANT'S MOTION TO EXCLUDE THE TESTIMONY OF KHUSH SHETH, A STATE'S WITNESS, ON A CLAIM THAT HIS IDENTIFICATION OF DEFENDANT-APPELLANT WAS THE PRODUCT OF UNDULY SUGGESTIVE PROCEDURES EMPLOYED BY POLICE."
 Defendant argues that the trial court should have suppressed thepretrial photographic identification of him by Kush Sheth. According toDefendant, the photospread identification procedure used wasimpermissibly suggestive because some of the photospreads Mr. Shethviewed included photographs of caucasian males, even though the twoperpetrators of this robbery were African-American males.
 The critical inquiry with respect to pretrial identifications iswhether on the totality of the circumstances the identification wasreliable, notwithstanding that the identification procedure may have beensuggestive. Neil v. Biggers (1972), 409 U.S. 188; State v. Davis(1997), 80 Ohio St.3d 311. The factors to consider include theopportunity of the witness to view the suspect at the time of the crime,the witness' degree of attention, the accuracy of the witness' priordescription, the level of certainty demonstrated by the witness at thepretrial identification, and the length of time between the crime and thepretrial identification. Id.
The evidence introduced at the suppression hearing demonstrates thatMr. Sheth was shown between eight to ten different photospreads, eachcontaining six photographs; a total of forty-eight to sixty photographs.Some of those photospreads contained photographs of caucasian males. Thevast majority of the photographs however were African-American males.Moreover, the photospread from which Mr. Sheth identified Defendantcontained a photograph of Defendant along with the photographs of fiveother men with similar facial features. This photospread was notsuggestive on its face, and police did not indicate to Mr. Sheth who thesuspect might be or even if that photospread included any suspect.
Additionally, the evidence demonstrates that Mr. Sheth had a good opportunity to view Defendant during the robbery in the well-lighted lobby of the motel. Upon viewing the photospread containing Defendant's picture, Mr. Sheth made an immediate and positive identification of Defendant.
This identification occurred just a few hours after the robbery. Mr. Sheth's previous description of Defendant was in many respects accurate.
In examining the totality of the facts and circumstances, it is evident that Mr. Sheth's pretrial identification of Defendant was reliable and therefore admissible. The trial court correctly refused to suppress this evidence.
The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR "DEFENDANT-APPELLANT'S TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO OBJECT TO THE TESTIMONY OF A POLICE WITNESS SUGGESTING THAT DEFENDANT-APPELLANT HAD BEEN ARRESTED FOR OTHER CRIMES (T. 371), OR FOR CONCEDING DURING HIS CLOSING ARGUMENT THAT EVIDENCE PRESENTED BY THE STATE WAS SUFFICIENT TO CONVICT DEFENDANT (T. 609), OR FOR ANY OTHER APPLICABLE CAUSE."
A defendant must meet a two prong test to demonstrate ineffective assistance of counsel. Strickland v. Washington (1984), 466 U.S. 688. He must show that counsel's performance fell below an objective standard of reasonable representation; in other words, that there was a substantial violation of counsel's essential duties to his client.Strickland, supra; State v. Lytle (1976), 48 Ohio St.2d 291. A defendantmust also demonstrate prejudice by showing a reasonable probability thatbut for counsel's violation of his duties, the outcome of the trial wouldhave been different. Strickland, supra; State v. Bradley (1989),42 Ohio St.3d 136.
 Judicial scrutiny of counsel's performance must be highly deferential.A court must indulge a strong presumption that counsel's conduct fallswithin the wide range of reasonable professional assistance. Id.Notwithstanding the particular failure alleged, the threshold inquiry iswhether prejudice resulted. Strickland, supra.
Defendant argues that his trial counsel performed deficiently byfailing to object to the testimony of a police officer which suggestedthat Defendant had been previously arrested for other crimes. The remarkwas made while Det. Bilinski was explaining to the jury how photospreadsare put together using a computer:
 "For the past four or five years, every perpetrator that's arrested has a picture that is taken, put into a photo computer of which about a month ago we had 10,000 pictures in that photo computer. We then make a photo spread from the computer pictures." (T. 371).
 First, we note that Det. Bilinski did not testify that police used aphotograph of Defendant taken following a previous arrest in preparing thephotospread shown to Mr. Sheth. While the jury might reasonably inferthat, another equally reasonable inference the jury could make is thatpolice used a photograph of Defendant taken after his arrest for thisoffense. Defense counsel's decision not to object and bring this matterto the jury's attention, which might have done more harm than good, mayhave been a matter of reasonable trial strategy, which does notconstitute deficient performance. State v. Shaw (1999),134 Ohio App.3d 316, 320; State v. Clayton (1980), 62 Ohio St.2d 45.Moreover, given the overwhelming evidence of Defendant's guilt, we cannotsay that had defense counsel objected to Det. Bilinski's statement, thereis a reasonable probability that Defendant would have been acquitted. Noprejudice from counsel's failure to object has been demonstrated.,Defendant further argues that his counsel performed deficiently by makingremarks during closing argument conceding that the evidence presented wassufficient to convict Defendant. Taken in their proper context, defensecounsel's remarks are as follows:
 "The issue in this case is not he probably did it. He may have did it. He could have did it. I think he did it. It's possible he did it. That's not the issue in this case.
 "Ladies and gentlemen, the issue in this case is beyond a reasonable doubt. That's the highest level of proof that we have in our system of law in this country. That's a high level, and it's difficult. It's a high level because it is and it's written down for you and the judge has told you it is evidence of such character that you would rely on it and act upon it in the most important of your dealings with your personal affairs. That means you take it to the bank. You rely on it.
 "And the prosecution has a heavy burden. The defense in a case like this has no burden to prove anything. You have to consider all the evidence in this case, and you have to make that decision." (T. 601-602).
 "You're the judge of those witnesses. You can follow the evidence that Mr. Miley put down and you can come back with a guilty verdict against Edward King. You can. There was no question that was evidence there that would convict him but you've got to look at the total evidence. All of it, not just some if it. If you just look at some of the evidence, yes, you can, but if you look at the totality of it, and look at it, you have the duty to follow the law. And the law says, as the judge has told you and put it in writing for you, that if the evidence is beyond a reasonable doubt to each and every element of the crime and this concludes that Edward King was the person who did it, you have a duty to convict him.
 "But you also have a duty, just like the police have a double duty, that if the evidence is not there and you're not convicted beyond a reasonable doubt, you have a duty, yeah, to follow the law and find him not guilty. That's why your job is tough. It's difficult. It could have been made a lot easier, but it wasn't it wasn't? And why? You've heard the evidence, you've heard the police officers. You can judge why people would lie and why I'm not going to say anybody is lying. I don't like to call anybody a liar. People have different perceptions, they perceive things different ways. Supreme different interests." (T. 609-610).
 These remarks by defense counsel, viewed in context, are not aconcession by defense counsel that Defendant is guilty. To thecontrary, the remarks indicate that if the jury focuses only uponselected parts of the evidence presented by the State, that evidence issufficient for the jury to find Defendant guilty. However, if the juryconsiders all of the evidence presented and the credibility of thewitnesses who testified, including the police officers, the weight ofthat evidence is not sufficient to meet the State's heavy burden ofproving Defendant's guilt beyond a reasonable doubt. Whether the Statehas met that high degree of proof is the real issue for the jury'sdetermination.
 We see no violation of counsel's essential duties in making thechallenged remarks because reliance upon the State's burden to proveguilt beyond a reasonable doubt is a legitimate trial strategy. Evendebatable trial tactics do not constitute ineffective assistance ofcounsel. Clayton, supra. No deficit performance has been demonstrated.
 The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR "THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 A weight of the evidence argument challenges the believability of theevidence, and asks which of the competing inferences suggested by theevidence is more believable or persuasive. State v. Hufnagle (Sept. 6,1996), Montgomery App. No. 15563, unreported. The proper test to applyto that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way. State v. Bradley (October 2, 1997), Champaign App. No. 97-CA-03, unreported.
Mr. Sheth, the witness who identified Defendant as the robber who wore the yellow sweatshirt, testified that the robber was clean shaven with no facial hair, had short hair with nothing unusual about it, and had no gold teeth. Photographs of Defendant taken shortly after the robbery depict Defendant with some facial hair, a goatee, his hair in braids ("cornrows"), and a gold front tooth. On the basis of this conflict in the evidence, Defendant argues that the jury lost its way in finding him guilty. We are not persuaded.
Mr. Sheth's description of Defendant's appearance at the time of the robbery varies in some respects from Defendant's actual appearance at that time. While those discrepancies go to the weight and credibility of Sheth's identification, they are not significant. For instance, Defendant's gold tooth is not visible unless Defendant is smiling. Thus, the mere fact that Mr. Sheth did not see Defendant's gold tooth during this robbery does not compel a conclusion that Sheth misidentified Defendant as one of the robbers. Additionally, Mr. Sheth's failure to notice a relatively small amount of facial hair, such as a goatee, during this stressful incident is likewise not particularly significant. Defendant's appearance matched Mr. Sheth's description in several respects: African-American male, about twenty one years old, average height, medium build.
More importantly, the other evidence presented by the State which demonstrates Defendant's participation in this robbery is very strong, if not overwhelming. Defendant was not at home at the time this robbery occurred, yet his alibi claim that he was elsewhere was never verified. Defendant's car was used as the getaway vehicle in this robbery. Clothing similar to that worn by not one but both robbers was found at Defendant's apartment. Witnesses to the robbery indicated that the guns used were equipped with laser sights, and a laser sight was discovered inside Defendant's apartment. After police questioned Defendant's wife and then left, Ms. King took a gun over to a neighbor and asked that she hide it.
Reviewing this trial record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice occurred. Defendant's conviction is not against the manifest weight of the evidence.
The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, P.J. and BROGAN, J., concur.