JOURNAL ENTRY AND OPINION
Defendant-appellant Damien Peterson appeals from his convictions for aggravated robbery in violation of R.C. 2911.01 and felonious assault in violation of R.C. 2903.11. The trial court imposed a four-year term of imprisonment for each crime and ordered that the terms be served concurrently.
On January 19, 2000, Omar Stearns (hereinafter Mr. Stearns or the victim) and his uncle, Ellis Stearns, were accosted by two men who were unknown to them. Mr. Stearns' grandmother resides near Eddy Road and St. Clair Ave. At 10:30 p.m., the time of the attack, Mr. Stearns and his uncle were on their way to the store. Two strangers approached them on a diagonal and inquired as to whether Mr. Stearns and his uncle knew someone in the neighborhood. Because they did not recognize these two men, Mr. Stearns and his uncle simply said no and provided no further information. Mr. Stearns observed that one of the men was carrying a silver pistol. He yelled to his uncle and turned around to run. At this point, Mr. Stearns was shot in the back. Ellis Stearns was ordered to leave the area. The two men proceeded to strip Mr. Stearns of the Avirex jacket he was wearing and remove approximately fifty dollars from his pants pocket.
Omar Stearns described the two men who robbed him. The man who was approximately five-foot seven inches tall and lighter in skin tone was the man with the firearm. The appellant was the second man involved. He was described as a larger man with a darker skin tone. During the robbery the assailants were close enough for Mr. Stearns to see their faces clearly. The appellant stepped on Mr. Stearns' face when inquiring after the money. After the robbery, the assailants told him to run away, an impossible feat with a bullet lodged in his back. The victim hopped to a neighbors' home as best he could. The perpetrators strolled away from the scene. By the time Mr. Stearns arrived at the neighbors' house, the police had been notified and were there within a few minutes.
Throughout the trial, Mr. Stearns repeatedly and emphatically identified the appellant as one of his assailants. (T. 139, 147, 155, 156, 159, 167, 174). Ellis Stearns fully corroborated the testimony of his nephew. When he was ordered to leave the area after his nephew was shot, Ellis Stearns went back to his mother's home which was a few houses away. Ellis Stearns made a positive in-court identification of the appellant as one of the assailants. He also testified that thirty minutes after the robbery he identified the appellant, who was then seated in the rear of a police vehicle. The assailant with the gun was also seated in the police vehicle and was wearing Mr. Stearns' jacket. Ellis Stearns affirmatively testified that the jacket's presence was not a factor in his identification, rather, he identified the appellant because he had seen his face.
Cleveland Police Detective Louis Vertosnik testified that he was on duty as a patrol officer the night of January 19, 2000. He and his partner, Tom Berry, responded to a call for shots fired on Eddy Road. EMS was already on the scene when the officers arrived. After speaking with those on the scene, the officers proceeded to the empty lot and observed footprints in the snow. There were four sets of footprints in the lot, two westbound and two eastbound. Officer Berry followed the footprints from Eddy Road to East 123rd Street. Detective Vertosnik retrieved the police vehicle and proceeded up East 124th Street. Although the two sets of footprints never separated, there were times when the officers lost sight of the footprints because the snow was too compacted or a street was crossed. At the end of the trail, the appellant and his accomplice were found in an abandoned van located in front of the second house south of Carnation Court on East 125th Street. Regarding the footprint trail, Detective Vetosnik testified that they:
 went through an empty lot from Eddy Road which is to abandon apartment buildings that was freshly covered with snow, hopped the fence, went through another yard, crossed 123rd through a school area, it is an abandon school called Hazel Dale, went through the playground area and they crossed 124th, cut a yard and a half, like catty cornered it to Carnation Court, which doesn't get a lot of traffic so it had pretty much snow. We could still follow. Crossed 125 again not again, but they crossed 125 back onto Carnation Court, and I picked them up when they jumped the fence into a yard and jumped behind a garage and jumped back over another fence and it led right to the back of the van. (T. 206-207).
At the time of the arrest, the appellant's accomplice was wearing Mr. Stearns' jacket. A search of the van revealed a semiautomatic handgun with one round in the chamber and four more in the magazine. Neither the money nor the hats worn by the perpetrators were recovered.
The appellant asserts two assignments of error, the second of which will be considered first. In the appellant's second assignment of error he argues that he was denied due process of law because the identification procedures used by the police in this case were suggestive.
In State v. Allen (1995), 73 Ohio St.3d 626, 653 N.E.2d 675, the Ohio Supreme Court held that the failure to raise the issue of a suggestive identification results in a waiver of that issue. The identification issue raised in the present appeal was not raised before the trial court and therefore all but plain error is waived. In State v. Martin (1998),127 Ohio App.3d 272, 275, the court cited to Neil v. Biggers (1972),409 U.S. 188 and noted that in that case, the United States Supreme Court held that even though a show-up identification, involving the exhibition of just one individual to an eyewitness, as opposed to a lineup, is suggestive, it may, nevertheless, not offend constitutional due process if, under the totality of the circumstances, the identification is reliable. In Biggers, supra, the Supreme Court held that the factors to be considered in evaluating the likelihood of misidentification include: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness' description of the criminal; 4) the level of certainty demonstrated by the witness at the confrontation; and, 5) the length of time between the crime and the confrontation. The central question is whether, under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive. Id.
In the matter at hand, Ellis Stearns testified that he was able to see the appellant's face when the appellant first approached because the appellant was two or three feet from him. When Ellis was told to leave the area, he was five to ten feet away from the assailants. As he left, Ellis Stearns kept looking over his shoulders in order to keep an eye on the men. Ellis Stearns identified the appellant in court and testified that, after the shot, the appellant rushed towards his nephew's body and began to go through pockets. Ellis Stearns observed the assailants manhandling his nephew's body and testified that there was no doubt in his mind that the appellant was one of the persons involved in the robbery. The two assailants left as they came, together.
It is evident from this testimony that, prior to the time his nephew was shot, Ellis Stearns had an opportunity to observe the appellant. Ellis Stearns had sufficient time to mentally process that the appellant was unknown to him and to determine that it would be best not to impart information regarding a neighbor to this unknown person. Ellis Stearns was given an opportunity to, and did, identify the appellant less than an hour from the time of the robbery. Despite the fact that Ellis Stearns' descriptions of the jackets and hats worn by the assailants was simple, he did identify that their clothing was dark. He was able to describe the relative heights and skin tones of the men. Most importantly, Mr. Ellis Stearns unhesitatingly identified the appellant as one of the perpetrators. The appellant has failed to demonstrate any unreliability of the identification made by Ellis Stearns.
Turning next to the identification made by the victim, Mr. Omar Stearns identified the appellant as one of the perpetrators at a preliminary hearing held approximately thirty days after the robbery. Mr. Stearns had the opportunity to observe the appellant prior to and during the crime, just as did his uncle. Omar Stearns was aware that the appellant and the accomplice were strangers to the neighborhood and should not be given any answers to questions. Mr. Stearns testified that the appellant was only a foot away from him at one point and that, during the robbery, it was the appellant who placed his foot on Omar's face. Despite close questioning on cross-examination, Mr. Stearns was not deterred from his identification of the appellant. During his testimony, Mr. Stearns, over and over again, emphasized his certainty regarding his identification of the appellant. The appellant has failed to demonstrate any unreliability of the identification made by Omar Stearns.
The second assignment of error is overruled.
In the first assignment of error the appellant asserts that he was denied effective assistance of trial counsel based upon counsel's failure to file a motion to suppress the eyewitness identification of the appellant by Omar and Ellis Stearns.
Ineffective assistance claims are evaluated in a two-step process. First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. State v. Keenan (1998),81 Ohio St.3d 133, 152, citing to Strickland v. Washington (1984),466 U.S. 668, 688. Second, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. See also State v. Davie (1997), 80 Ohio St.3d 311, 331 and State v. Reynolds (1997),80 Ohio St.3d 670, 674. There is a strong presumption that licensed attorneys are competent and that the challenged action is the product of sound trial strategy. State v. Hamblin (1988), 37 Ohio St.3d 153. Even debatable tactics do not constitute ineffective assistance of trial counsel, for it is obvious that nothing is seen more clearly than with hindsight. State v. Clayton (1980), 62 Ohio St.2d 45, 49. A reviewing court must evaluate trial counsel's performance on the facts of the particular case as of the time of counsel's conduct. Strickland, supra.
In the matter now before this court, we have held that the identification of the appellant by Omar Stearns and by Ellis Stearns was properly admitted. We also note that the state presented overwhelming evidence of the appellant's guilt. Ellis Stearns identified the appellant in court and his testimony indicated that he could identify the appellant because of his observations at the crime scene. The suppression of the stand-up identification made by Mr. Ellis Stearns would not have changed the results of the trial. Likewise, the victim's testimony was unwavering regarding his identification of the appellant both in court and at the scene of the crime. Suppression of his pretrial identification of the appellant would not have altered the outcome of the trial.
The appellant's first assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and MICHAEL J. CORRIGAN, J., CONCUR.