OPINION.
{¶ 1} This appeal is taken from a final judgment of the Portage County Court of Common Pleas. Appellant, Tyrone Lee Noling, appeals from the trial court's decision denying his petition for postconviction relief. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On August 18, 1995, the Portage County Grand Jury indicted appellant for his involvement in the deaths of Bearnhardt and Cora Hartig. The indictment charged appellant with two counts of aggravated murder, with each count including specifications of aggravating circumstances pursuant to R.C. 2929.04(A)(3) and 2929.04(A)(7). Appellant also was indicted on two counts of aggravated robbery and one count of aggravated burglary. All five charges included an additional specification that appellant had a firearm on or about his person or under his control while committing the offenses.
 {¶ 3} Following a trial, a jury found appellant guilty of all five charges, including the enumerated specifications. The trial court then conducted the penalty phase of the proceedings, after which the jury returned a recommendation that the court impose the death penalty. In its ensuing judgment entry, the trial court independently concluded that the death penalty was warranted and sentenced appellant accordingly. The court also ordered appellant to serve consecutive sentences for the remaining three counts and for the firearm specifications. Appellant's convictions and death sentence were then affirmed on appeal by this court in State v. Noling (June 30, 1999), 11th Dist. No. 96-P-0126, 1999 WL 454476, and by the Supreme Court of Ohio in State v. Noling,98 Ohio St.3d 44, 2002-Ohio-7044.
 {¶ 4} On September 3, 1999, appellant filed with the trial court a petition for postconviction relief under R.C. 2953.21. In his petition, appellant asserted the following claims for relief: (1) actual innocence; (2) prosecutorial misconduct; (3) withholding of exculpatory evidence; and (4) ineffective assistance of counsel. The trial court considered appellant's claims and issued a decision on April 9, 1998, dismissing appellant's petition, finding that there were no substantive grounds for such relief.[1]
 {¶ 5} From this judgment, appellant filed a timely notice of appeal with this court. He now submits the following assignments of error for our consideration:
 {¶ 6} "[1.] The trial court erred in dismissing Petitioner's postconviction claims on the ground that all of the claims are barred byres judicata[.]
 {¶ 7} "[2.] The trial court erred in dismissing the substantive grounds for relief raised in Petitioner's postconviction petition without allowing Petitioner to present at an evidentiary hearing the evidence accompanying the petition[.]
 {¶ 8} "[3.] The trial court erred in dismissing Petitioner's claim of actual innocence on the ground that the affidavits of alleged accomplices should be looked upon with the `utmost suspicion' because the alleged accomplices recanted their testimony[.]
 {¶ 9} "[4.] The trial court erred in dismissing Petitioner's claim of prosecutorial misconduct in presenting false testimony on the ground that the affidavits of the alleged accomplices describing prosecutorial coercion and coaching should be viewed with the `utmost suspicion' because they contain recanted testimony[.]
 {¶ 10} "[5.] The trial court erred in dismissing Petitioner's claim of prosecutorial withholding of evidence on the ground that withheld evidence of the purse-snatching involving Petitioner and the alleged accomplices on the afternoon of the murders was not exculpatory and it was not established that the result of the trial would have been different[.]
 {¶ 11} "[6.] The trial court erred in dismissing all of Petitioner's claims of ineffective assistance of counsel on the ground that the petition failed to allege or present sufficient operative facts of deficient performances, failed to allege or present sufficient evidence of prejudices, or involved matters of trial strategy not subject to review[.]" (Emphasis sic.)
 {¶ 12} Under his first assignment of error, appellant argues that the trial court abused its discretion when it found that his claims were barred by the doctrine of res judicata. He maintains that in doing this, the trial court failed to first consider whether the merits of his petition could have been determined without resort to evidence outside the record. We disagree.
 {¶ 13} The language appellant takes issue with clearly refers only to his claims of ineffective assistance of counsel. There is absolutely nothing in the trial court's judgment entry to suggest that in finding res judicata applicable with respect to those claims that the court intended to rely on the doctrine to dismiss the remainder of appellant's petition. The court individually reviewed each of appellant's claims for relief and ultimately concluded that none had any merit. Consequently, we will consider the applicability of res judicata as we address appellant's other assignments of error throughout this opinion. See, generally, Statev. Wiles (Apr. 27, 2001), 11th Dist. No. 99-P-0109, 2001 WL 435397, at 2. Appellant's first assignment of error is not well taken.
 {¶ 14} In his second assignment of error, appellant argues that the trial court abused its discretion in dismissing his petition without holding a full evidential hearing. He submits that a fair reading of his petition and the attached evidence does not support the trial court's conclusion that there were no substantive grounds for relief. Instead, because appellant contends that his petition and the subsequent amendments were "at least facially sufficient to state constitutional violations[,]" he claims that the trial court was obligated to allow him to present all of his evidence at a hearing.
 {¶ 15} Before considering the merits of appellant's second assignment of error, we would note the following. Appellant insists that because this was a summary judgment exercise, the trial court was required to construe the evidence supporting his petition in his favor. Although the state did file a motion for summary judgment that would have required the trial court to decide whether appellant's materials were sufficient to raise the possibility that a constitutional violation had occurred, it is clear from the court's judgment entry that it did not grant the state summary judgment, but, instead, decided the case on the merits of the petition. Therefore, the trial court was not required to follow the procedures governing a summary judgment exercise.
 {¶ 16} According to appellant, the trial court scheduled an evidential hearing for September 17, 1997, during which he planned to present testimony from several witnesses to support his petition. However, the trial court converted the hearing to a status conference to determine whether or not there was "any newly discovered evidence that need[ed] to be presented other than what [was] submitted in the briefs." After appellant's attorney advised the trial court that appellant's petition was not based on newly discovered evidence but on evidence outside the record, the court allowed appellant to supplement his petition with testimony from a witness who had not previously submitted an affidavit.
 {¶ 17} Appellant now complains that the trial court's refusal to allow him to present all of his supporting evidence at a hearing "ignored the law governing postconviction relief." He speculates that the trial court may have confused the standard for granting a new trial based on newly discovered evidence with the standard for granting an evidential hearing in postconviction relief proceedings.
 {¶ 18} R.C. 2953.21 provides in relevant part:
 {¶ 19} "(C) The court shall consider a petition that is timely filed under division (A)(2) of this section even if a direct appeal of the judgment is pending. Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. The court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.
 {¶ 20} "* * *
 {¶ 21} "(E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending. If the court notifies the parties that it has found grounds for granting relief, either party may request an appellate court in which a direct appeal of the judgment is pending to remand the pending case to the court."
 {¶ 22} Accordingly, a defendant challenging his conviction through a petition for postconviction relief is not automatically entitled to a hearing. State v. Calhoun, 86 Ohio St.3d 279, 282, 1999-Ohio-102. "Only after he meets his initial burden to show substantive grounds for relief from the files and records of the case and, often, evidentiary materials dehors the record is a hearing required." State v. Davie (Sept. 25, 1998), 11th Dist. No. 97-T-0175, 1998 WL 684157, at 2. Stated differently, "* * * before a hearing is granted, `the petitioner bears the initial burden to submit evidentiary documents containing sufficientoperative facts to demonstrate * * *'" that errors did occur and that the errors resulted in prejudice. (Emphasis sic.) Calhoun at 283, quotingState v. Jackson (1980), 64 Ohio St.2d 107, syllabus. Moreover, "* * * if the court can resolve the averments contained within the petitioner's request based upon the material contained within the petition, and the files and records, it may properly dismiss the matter without conducting a hearing." State v. Hill (June 16, 1995), 11th Dist. No. 94-T-5116, 1995 WL 418683, at 2.
 {¶ 23} After reviewing appellant's petition, along with the supporting evidence, we conclude that the trial court did not abuse its discretion in declining to hold a full evidential hearing. On October 20, 1997, the trial court gave appellant the opportunity to present evidence that was not included with his original petition and subsequent amendments. More importantly, even though there initially may have been a misunderstanding as to the type of evidence appellant could present, the trial court did not limit appellant to what may be considered newly discovered evidence. Rather, the court allowed appellant to present testimony from a witness who had not submitted an affidavit with the petition and eventually assessed all of appellant's evidence before dismissing his petition.
 {¶ 24} Furthermore, although appellant may have wanted to bolster the submitted affidavits with testimony, there is no indication that the witnesses would have provided anything more than what already had been stated. Appellant did not proffer what the witnesses' testimony would have been, and the substance of the excluded testimony is not apparent from the record. See State v. Davie, 80 Ohio St.3d 311, 327,1997-Ohio-341 (holding that "* * * error may not be predicated upon a ruling which excludes evidence unless it affects a substantial right of the party and the substance of the excluded evidence was made known to the court by proffer or was apparent from the context within which the questions were asked."). Appellant's second assignment of error has no merit.
 {¶ 25} Under assignment of error three, appellant maintains that the trial court erred in dismissing his claim of actual innocence. He argues that the court improperly assessed the credibility and reliability of the affidavits submitted by his three accomplices, Gary St. Clair ("St. Clair"), Butch Wolcott, Jr. ("Wolcott"), and Joey Dalesandro ("Dalesandro"), in which they averred, contrary to their prior statements and/or testimony, that they were not involved in the Hartig murders. Appellant further contends that even if you exclude those affidavits from consideration, the other evidence submitted in support of his petition demonstrates that he is innocent of all charges.
 {¶ 26} In rejecting this claim, the trial court first noted that the evidence admitted at trial showed that appellant was in the victims' home on the day of the murders, that he was armed, and that an accomplice inside the home with him heard gunshots. As for the affidavits from appellant's accomplices, the trial court concluded that they should be viewed with the "`utmost suspicion.'"
 {¶ 27} When reviewing a petition for postconviction relief, "* * * a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition * * *." Calhoun at paragraph one of the syllabus. Nevertheless, in the sound exercise of discretion, a trial court may "* * * judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact." Id. According to the Supreme Court:
 {¶ 28} "* * * To hold otherwise would require a hearing for every postconviction relief petition. Because the statute clearly calls for discretion in determining whether to grant a hearing, accepting all supporting affidavits as true is certainly not what the statute intended. * * *
 {¶ 29} "Unlike the summary judgment procedure in civil cases, in postconviction relief proceedings, the trial court has presumably been presented with evidence sufficient to support the original entry of conviction, or with a recitation of facts attendant to an entry of a guilty or no-contest plea. The trial court may, under appropriate circumstances in postconviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant. That conclusion is supported by common sense, the interests of eliminating delay and unnecessary expense, and furthering the expeditious administration of justice. * * *
 {¶ 30} "An affidavit, being by definition a statement that the affiant has sworn to be truthful, and made under penalty of perjury, should not lightly be deemed false. However, not all affidavits accompanying a postconviction relief petition demonstrate entitlement to an evidentiary hearing, even assuming the truthfulness of their contents. Thus, where a petitioner relies upon affidavit testimony as the basis of entitlement to postconviction relief, and the information in the affidavit, even if true, does not rise to the level of demonstrating a constitutional violation, then the actual truth or falsity of the affidavit is inconsequential. * * *
 {¶ 31} "In determining the credibility of supporting affidavits in postconviction relief proceedings, we adopt the reasoning of the First Appellate District in State v. Moore (1994), 99 Ohio App.3d 748 * * *. The court, in Moore, cited Sumner [v. Mata (1981), 449 U.S. 539], and suggested that a trial court, in assessing the credibility of affidavit testimony in so-called paper hearings, should consider all relevant factors. Id. at 754, 651 N.E.2d at 1323. Among those factors are: (1) whether the judge reviewing the postconviction relief petition also presided at the trial; (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person; (3) whether the affidavits contain or rely on hearsay; (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts; and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony. Id. at 754-756 * * *.
 {¶ 32} "Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. Such a decision should be within the discretion of the trial court. A trial court that discounts the credibility of sworn affidavits should include an explanation of its basis for doing so in its findings of fact and conclusions of law, in order that meaningful appellate review may occur." (Citations omitted.) Calhoun at 284-285.
 {¶ 33} Upon reviewing the three affidavits in question, we hold that the trial court did not abuse its discretion in assigning little or no credibility to them. Although the judge who reviewed appellant's petition did not preside over his trial, there are no allegations that the judge was unfamiliar with the case, or otherwise unprepared to consider appellant's arguments. Furthermore, St. Clair and Dalesandro, who are both incarcerated for their involvement in the murders, along with Wolcott, who also participated, obviously are interested in the success of appellant's efforts. In addition, the affidavits are based in large part on out-of-court statements. Therefore, they contain and rely on hearsay.
 {¶ 34} In examining whether the affidavits contradict the record, we must first look at the testimony given at appellant's trial. Wolcott, who was granted immunity by the prosecution for his testimony, testified that he, appellant, St. Clair, and Dalesandro devised a plan to target the elderly in an effort to rob them of their Social Security checks. They would gain entry into a victim's home by knocking on the door and, under the pretense that they were having trouble with their automobile, ask to use the telephone. Once inside the home, weapons would be shown and the victims would be robbed.
 {¶ 35} Wolcott told the jury that they had successfully implemented the plan two times in Alliance, Ohio, before the final robbery ending with the Hartig's deaths.[2] On that day, April 5, 1990, Wolcott, St. Clair, Dalesandro, and appellant were driving around in Dalesandro's vehicle when they saw Mr. Hartig outside his home and decided he would be their next victim. Appellant and St. Clair exited the vehicle while Wolcott and Dalesandro were told to drive around for a few minutes. According to Wolcott, he saw appellant and St. Clair knock on the front door, and after a woman answered, observed appellant force his way into the home with St. Clair following him.
 {¶ 36} When between twenty and thirty minutes passed and there still was no sign of appellant and St. Clair, Wolcott and Dalesandro became concerned that something had gone wrong. As a result, Dalesandro pulled into the victim's driveway. While parked in the driveway, Wolcott heard gunshots, a lady screaming, and then more gunshots. Appellant and St. Clair then ran out of the Hartig's home and entered Dalesandro's car. Wolcott testified that inside the car he saw the gun in appellant's hand smoking. He also claimed that as the four were traveling back to Alliance, appellant admitted to shooting both victims, and that from the time of the murders until their arrest appellant repeatedly threatened to kill anyone who spoke about the murders.
 {¶ 37} In his affidavit, however, Wolcott denied participating in the two earlier robberies, as well as the Hartig murders. He maintained that it was only after pressure from the prosecution, through repeated threats to withhold immunity and prosecute him for the crimes, that he agreed to testify against appellant. Wolcott also claimed that instead of committing the crimes they were accused of, he, appellant, St. Clair, and Dalesandro were involved in a purse snatching in Alliance at the same time the state theorized the murders here occurred.
 {¶ 38} St. Clair, who had previously entered a guilty plea for his role in the Hartig murders, testified in detail with respect to his involvement in the first two robberies and the plan that had been developed to gain access into the intended victims' homes. St. Clair also admitted that in his pretrial statement he told authorities that he and appellant had robbed the Hartigs and that appellant had shot them. However, both at trial and in his affidavit, he denied any involvement in the Hartig murders and explained that the only reason he pleaded guilty to the murders was because his lawyers told him that he would otherwise receive the death penalty. St. Clair claimed that he used the evidence shown to him by the prosecution to help him decide what to say.
 {¶ 39} In his affidavit, St. Clair continued to deny any involvement in the murders. He also reiterated his earlier declaration that he only pleaded guilty to avoid the death penalty. St. Clair maintained that he was involved in a purse snatching in Alliance on the day of the murders.
 {¶ 40} Appellant's final accomplice, Dalesandro, also testified about the events surrounding the first two robberies and how they had obtained access to the victims' homes. Dalesandro further testified that it was appellant's idea to target the elderly because they would be more vulnerable. With respect to the Hartig murders, Dalesandro explained how appellant gave him directions where to drive. Once they decided to rob the Hartigs, Dalesandro testified that appellant and St. Clair exited his vehicle and entered the home. Approximately thirty minutes later, Dalesandro saw appellant and St. Clair run across the front yard. When they reentered the vehicle, appellant told Dalesandro "get out of here" because he had "just killed two old people." According to Dalesandro, he smelled the odor of gunpowder and saw blood on appellant's shirt.
 {¶ 41} Dalesandro told the jury that once they returned to Alliance he accompanied appellant when he sold two guns, a shotgun, and a "little gun" to someone named "Chico." After the four were later arrested and Dalesandro eventually was released, he received a telephone call from appellant who was still in jail. Dalesandro testified that during this conversation, appellant told him to dispose of a third gun that he had placed in the glove box of Dalesandro's vehicle. Dalesandro subsequently gave this weapon to "Chico."
 {¶ 42} Dalesandro's affidavit, however, stated that he was not involved in the Hartig murders and that he only agreed to a plea bargain because of pressure from his attorney and from his family. It further provided that he was with appellant, St. Clair, and Wolcott in Alliance on the day in question.
 {¶ 43} We conclude that the trial court properly gave due deference to the affidavits filed in support of appellant's claim for actual innocence, and in the sound exercise of discretion, properly weighed their credibility. The affidavits recant prior testimony and rely on hearsay, or both. Moreover, considering the affiants' affiliation with appellant and with each other, and their direct interest in the success of appellant's efforts, the affidavits were not sufficient to establish substantive grounds for postconviction relief.
 {¶ 44} As for the other evidence submitted in support of this claim, we conclude that res judicata prevents this court from considering it.[3] In the context of postconviction proceedings, the doctrine of res judicata applies to bar the raising of issues that were raised or could have been raised in the trial court or on appeal from the trial court's judgment. The Supreme Court of Ohio has held:
 {¶ 45} "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment."State v. Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus.
 {¶ 46} Applying this doctrine here, it is apparent that if appellant wanted to challenge his convictions on the ground of actual innocence with this other evidence, he had to raise the issue in the direct appeal of his judgment of conviction. Having failed to do this, appellant is barred by res judicata from raising this claim at a postconviction proceeding. Consequently, appellant's third assignment is without merit.
 {¶ 47} In assignment of error four, appellant argues that the trial court erred in dismissing his claim of prosecutorial misconduct. He contends that the state introduced the coerced testimony of his alleged accomplices knowing that it was false and misleading.
 {¶ 48} In order to make a finding of prosecutorial misconduct, a reviewing court must determine whether the challenged conduct was improper, and if so, whether it affected the defendant's substantial rights. See, e.g., State v. Smith, 87 Ohio St.3d 424, 442,2000-Ohio-450. A conviction will not be reversed because of prosecutorial misconduct, however, unless it so taints the proceedings that a defendant is deprived of a fair trial. Id.
 {¶ 49} Appellant primarily relies upon the affidavits submitted by his accomplices to support this claim. However, as previously noted, the trial court determined that these affidavits were not credible. Moreover, the affidavits of Harold Wolcott, Wolcott's father, and Robert St. Clair, St. Clair's father, contain numerous instances of hearsay and are similarly unreliable. Thus, there is simply no evidence that the state knowingly presented false testimony. Appellant's fourth assignment of error is without merit.
 {¶ 50} Under his fifth assignment of error, appellant argues that the state violated his constitutional rights by failing to disclose evidence favorable to his case prior to trial. Specifically, he alleges that although the state knew he and his three accomplices were involved in a purse snatching on the day of the murders, it failed to provide him with police reports or other documentation about the incident. Appellant believes that such evidence would have provided him with the opportunity to present the jury with an alibi that could have created doubt as to whether he was involved in the Hartig murders.
 {¶ 51} In Brady v. Maryland (1963), 373 U.S. 83, 87, the United States Supreme Court held that the suppression by the state of evidence favorable to an accused violates due process where the evidence is material either to guilt or punishment, regardless of whether the state acted in good or bad faith. To establish a Brady violation, the defendant must show that: (1) the prosecution failed to disclose evidence upon request; (2) the evidence was favorable to the defense; and (3) the evidence was material.
 {¶ 52} Evidence is "material" "* * * if there is a reasonable probability that, had it been disclosed to the defense, the result of the proceedings would have been different." State v. Holder, 11th Dist. Nos. 2001-G-2345 and 2001-G-2350, 2002-Ohio-7124, ¶ 47. See, also, UnitedStates v. Bagley (1985), 473 U.S. 667. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish `materiality' in the constitutional sense." United States v. Agurs (1976), 427 U.S. 97,109-110. Rather, with respect to the question of whether the results would have been different, the United States Supreme Court has commented that:
 {¶ 53} "Bagley's touchstone of materiality is a `reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A `reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression `undermines confidence in the outcome of the trial.'" Kyles v. Whitley
(1995), 514 U.S. 419, 434.
 {¶ 54} In the case at bar, even assuming that the state knowingly withheld evidence of a purse snatching there is no "reasonable probability" that the trial result would have been different. If appellant and his accomplices did participate in a purse snatching as he claims, that information was obviously known to appellant at the time of trial. In fact, he admits that he spoke with his attorney about this very topic. Furthermore, the fact that appellant may have been involved in another crime in a different area is not evidence of innocence. Although the state had a theory concerning the time of the murders, there is still a likely possibility that appellant and the three other individuals could have committed both the murders and the purse snatching. Therefore, in light of the other evidence presented at trial, we cannot say that the failure to disclose evidence of the purse snatching undermined confidence in the fairness of appellant's trial. Appellant's fifth assignment of error has no merit.
 {¶ 55} Finally, in his sixth assignment of error, appellant argues that the trial court erred in dismissing his claim of ineffective assistance of counsel. He maintains that his attorneys' conduct was so unreasonable that it severely prejudiced the outcome of his trial.
 {¶ 56} In State v. Kish, 11th Dist. No. 2001-L-014,2002-Ohio-7130, at ¶¶ 62-66, this court held the following regarding ineffective assistance of counsel:
 {¶ 57} "The standard for determining whether or not a criminal defendant has been afforded his right to effective assistance is well-settled in Ohio. To be successful on such a claim, a criminal defendant must meet the two-pronged test originally articulated by the United States Supreme Court in Strickland v. Washington (1984),466 U.S. 668, and subsequently adopted by the Supreme Court of Ohio inState v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. See, also, State v. Swick, 11th Dist. No. 97-L-254,2001-Ohio-8831, 2001 Ohio App. LEXIS 5857, at 4.
 {¶ 58} "First, a defendant must be able to show that his trial counsel was deficient in some aspect of his representation. Bradley at 141. This requires a showing that trial counsel made errors so serious that, in effect, the attorney was not functioning as the `counsel' guaranteed by both the United States and Ohio Constitutions. Id.
 {¶ 59} "Second, a defendant must be able to show that the deficient performance prejudiced his defense. Id. at 142. This requires a showing that there is `a reasonable probability that, were it not for counsel'[s] errors, the result of the trial would have been different.' Id. at paragraph three of the syllabus. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 142.
 {¶ 60} "There is a strong presumption in Ohio that a licensed attorney is competent. State v. Smith (1985), 17 Ohio St.3d 98, 100. Accordingly, to overcome this presumption, a defendant must show that the actions of his attorney did not fall within a range of reasonable assistance. State v. Smith (Dec. 22, 2000), 11th Dist. Nos. 99-P-0039 and 99-P-0040, 2000 Ohio App. LEXIS 6115, at 18.
 {¶ 61} "Debatable strategic and tactical decisions will not form the basis of a claim for ineffective assistance of counsel, even if there had been a better strategy available. State v. Phillips, 75 Ohio St.3d 72,85, 1995-Ohio-171. In other words, errors of judgment regarding tactical matters do not substantiate a defendant's claim of ineffective assistance of counsel. Swick at 4."
 {¶ 62} Appellant first argues that his attorneys were ineffective because they failed to conduct a proper voir dire. He claims that there was extensive pretrial publicity focusing on him as the perpetrator in the Hartig murders. Accordingly, he maintains that his attorneys should have questioned prospective jurors about their exposure to the pretrial publicity and about the effect it had on their ability to act as impartial triers of fact.
 {¶ 63} As to this claim, we note that it could have been raised as an assignment of error in appellant's appellate brief on direct appeal from his conviction. "Where ineffective assistance of counsel is alleged in a petition for postconviction relief, the defendant, in order to secure a hearing on his petition, must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the defendant." State v. Cole (1982), 2 Ohio St.3d 112, 114. Moreover, when a "* * * defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence dehors the record, res judicata is a proper basis for dismissing defendant's petition for postconviction relief." (Emphasis sic.) Id. at syllabus.
 {¶ 64} On direct appeal, appellant was represented by new counsel who had the opportunity to assert the ineffectiveness of appellant's trial counsel. Therefore, the question of whether appellant's trial attorneys conducted a proper voir dire is barred by res judicata for purposes of appellant's petition for postconviction relief. However, even if that were not true, the Supreme Court rejected this same argument in appellant's direct appeal to that Court. Noling, 98 Ohio St.3d at ¶ 111.
 {¶ 65} Next, appellant asserts that his attorneys were ineffective for failing to raise the alleged purse snatching as an alibi at trial. He claims that despite informing his attorneys that he, Wolcott, St. Clair, and Dalesandro committed a purse snatching in Alliance at the same time the state alleged someone murdered the Hartigs, his attorneys failed to pursue the matter any further.
 {¶ 66} This claim is also barred by res judicata. At the time he filed his direct appeal, appellant was obviously aware that his trial attorneys had not presented the jury with the alleged purse snatching as an alibi. As a result, he should have raised this issue in his direct appeal.
 {¶ 67} A similar analysis is also applicable to appellant's claim that his trial attorneys rendered ineffective assistance of counsel by failing to present evidence of other suspects. He believes that if counsel had conducted a proper investigation, another perpetrator of the crime would have been found. In support, appellant attached a police report indicating that on the day before the murders, Bearnhardt Hartig was concerned about his insurance agent's failure to pay a $10,000 loan. He also attached a statement from the insurance agent in which he admitted to the police that he had once owned a weapon of the same caliber used in the Hartig murders.
 {¶ 68} It is unclear whether this evidence was part of the record at the time appellant pursued an appeal from his convictions. Nevertheless, even if it were not, this court cannot say that his attorneys were ineffective for failing to present it to the jury. The connection between the other suspect and the murders is tenuous at best. Therefore, appellant's attorneys may have made a reasoned tactical decision to not present this theory as part of appellant's defense, and appellant has not explained how this decision prejudiced him.
 {¶ 69} Appellant's next five claims concern the alleged failure of his attorneys to impeach the following evidence presented by the state: (1) the smoke from the barrel of appellant's gun; (2) the conflict among the state's witnesses over the identity of the murder weapon; (3) the timing of the murders; (4) the location of a bullet hole in a dining room chair and the location of a spent shell casing on the floor; and (5) the chain of custody and identity of the murder weapon. Except for the ballistics evidence, appellant relied upon materials to support each of his claims that were available to him when he filed an appeal challenging his convictions. Therefore, he is barred by the doctrine of res judicata from asserting these claims at this time.
 {¶ 70} With respect to the ballistics report, we cannot determine whether it was admitted at trial, or whether it was outside the record and unavailable to appellant for purposes of his direct appeal. This report, dated February 20, 1993, states that after a firearms instructor fired several small caliber handguns he was unable to detect any visible smoke coming from their barrels. Accordingly, the report contradicted the testimony of Wolcott and Dalesandro, who testified that when appellant entered their vehicle after leaving the Hartigs' residence, the gun in his hand was still smoking.
 {¶ 71} Even though the report is clearly inconsistent with Wolcott's and Dalesandro's testimony, appellant has not demonstrated how the failure to introduce it prejudiced him. In other words, when considering the other evidence introduced at trial, including the other portions of his two accomplice's testimony, the fact that they may have been mistaken about the presence of smoke does not undermine confidence in the jury's verdict.
 {¶ 72} In his final claim for ineffective assistance of counsel, appellant argues that his attorneys failed to adequately draw attention to the differences between the first two robberies, which appellant admits he was involved in, and the Hartig murders. He submits that the differences between the crimes "creates serious doubt" that they were committed by the same perpetrator, giving support to his position that although he was involved in the first two robberies, he did not kill the Hartigs.
 {¶ 73} Appellant relies exclusively on the evidence presented during his trial to support this claim. Accordingly, because this was a matter that could have been raised in a direct appeal, res judicata bars appellant from raising the issue in a postconviction relief proceeding. Appellant's sixth assignment of error is not well-taken.
 {¶ 74} Based on the foregoing analysis, we conclude that appellant's petition for postconviction relief failed to establish that a violation of his basic constitutional rights occurred during his trial. Appellant's six assignments of error have no merit. The judgment of the trial court is affirmed.
Judgment affirmed.
WILLIAM M. O'NEILL and CYNTHIA WESTCOTT RICE, JJ., concur.
[1] Although the state filed a motion for summary judgment, the record shows that the trial court never ruled on it; as a result, for purposes of appeal we will presume that the trial court overruled the motion when it dismissed appellant's petition. State v. Hines (2001),145 Ohio App.3d 792, 794, fn. 2.
[2] Appellant was separately convicted and sentenced for the Alliance robberies.
[3] This evidence included the lack of physical evidence connecting appellant to the crime scene; the location of shell casings and of a bullet hole in a dining room chair; and the fact that the recovered weapon was not used to kill the Hartigs.