[Cite as *State v. Pugh*, 2015-Ohio-5115.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                            :

        Plaintiff-Appellee,         :            No. 14AP-950
                                                      (M.C. No. 2013TRC188501)

v.                                 :
                                          (REGULAR CALENDAR)

Brett J. Pugh,                   :

        Defendant-Appellant.      :

---

D E C I S I O N

Rendered on December 10, 2015

---

*Richard C. Pfeiffer, Jr.*, City Attorney, and *Orly Ahroni*, for
appellee.

*Timothy Young*, Ohio Public Defender, and *Terrence K.
Scott*, for appellant.

---

APPEAL from the Franklin County Municipal Court

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant Brett J. Pugh appeals from a judgment of the Franklin County Municipal Court convicting him of operating a motor vehicle while under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a). For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On October 10, 2013, Pugh received a traffic ticket charging him with OVI, in violation of R.C. 4511.19(A)(1)(a); operating a vehicle with a prohibited concentration of breath alcohol, in violation of R.C. 4511.19(A)(1)(d); driving under suspension, in violation of R.C. 4510.11(A); a marked lane violation, in violation of R.C. 4511.33(A);

following too closely, in violation of R.C. 4511.34; and failure to wear a seat belt, in violation of R.C. 4513.263(B)(1).

{¶ 3}   On April 15, 2014, Pugh filed a motion to suppress requesting that the trial court suppress all evidence, statements, observations, tests and test results.  Pugh argued there was no lawful cause to stop or detain him, and the trooper did not comply with the National Highway Traffic Safety Administration ("NHTSA") standards when he administered the field sobriety tests.  Pugh also asserted that the breathalyzer test was invalid.  At an October 15, 2014 suppression hearing, Ohio State Highway Patrol Trooper Ishmael Dabo testified that after he handcuffed Pugh, Pugh told him that he went to meet some friends at a bar but left the area immediately after arriving because he saw police in the parking lot with their guns drawn.  Trooper Dabo testified on cross-examination that the warning he provided was not a complete recitation of the *Miranda* rights.  At the conclusion of the hearing, the trial court determined that the testimony was incomplete regarding the *Miranda* rights administered.  The trial court denied Pugh's motion with regard to lawful cause to stop and detain, substantial compliance with the NHTSA standards, and the results of the breathalyzer test, but the trial court granted Pugh's motion to suppress statements he made to the trooper following his arrest.

{¶ 4}   Subsequently, the trial court conducted a jury trial on the OVI charges and a bench trial on the other charges.  Trooper Dabo testified that at approximately 2:40 a.m. on October 10, 2013, he observed Pugh driving on an access road along State Route 161 between Busch Boulevard and Cleveland Avenue, traveling significantly over the 25 miles per hour speed limit.  Trooper Dabo observed Pugh fail to stop at a stop sign on the access road and fail to stop at a red light before turning right onto State Route 161.  Trooper Dabo began following Pugh and observed him drive over the marked lanes with his tire over the white line by one tire width and follow another car too closely.  After Trooper Dabo stopped Pugh, Pugh could not produce his license because it was under suspension. Trooper Dabo smelled alcohol and asked Pugh to perform field sobriety tests.  Pugh's eyes were bloodshot, glassy and red, and Pugh stumbled as he walked toward Trooper Dabo's patrol vehicle.  After conducting the horizontal gaze nystagmus test, the vertical gaze nystagmus test, the walk-and-turn test, and the one-leg stand test, Trooper Dabo informed Pugh he was under arrest for OVI.  Trooper Dabo drove Pugh to the Clinton

Township Police Department, and Pugh agreed to take a breathalyzer test, which registered a result of .109 grams of alcohol per 210 liters of breath.

{¶ 5} During Trooper Dabo's direct testimony, the city prosecutor asked Trooper Dabo whether Pugh "used abusive language toward [him]." Trooper Dabo responded "No, not that I can remember. * * * What I do remember him telling me, that he was at a bar and --," causing Pugh's counsel to object. (Oct. 17, 2014 Tr. Vol. II, 222.) The trial court sustained the objection and instructed Trooper Dabo not to volunteer additional information. Then, out of the hearing of the jury, the attorneys and the trial court discussed the following:

> MS. O'BRIEN: Thank you, Your Honor. The trooper has made a statement that was suppressed in a motion to suppress two days ago. The statement was made after the defendant, Mr. Pugh, was improperly Mirandized, and I believe that that is why the Court found that statement should be suppressed. Therefore, I'm asking that that statement be stricken from the record and that there be a jury instruction to disregard it.
>
> THE COURT: Mr. Bowen.
>
> MR. BOWEN: Your Honor, under the circumstances under which the statement was made by the trooper, I actually think it was an appropriate response to the line of questioning.
>
> THE COURT: It was voluntarily--Here's the thing. I will grant your motion, but I have to tell you, I'm guessing that that will reinforce whatever they thought. And, I'm not sure, but his speech is difficult to understand, he doesn't speak very loud, it might have gone right by them. If you want me to give a curative instruction, I will do it.
>
> MS. O'BRIEN: Your Honor, would you permit us to reevaluate, to go on the record again at a recess, so I can talk to our client and co-counsel on whether or not to make a jury instruction to strike that?
>
> MR. SINOFF: I say no.
>
> MS. O'BRIEN: Then let's not.

THE COURT: If you're going to do it, you've got to do it now. If you do it later, it's even worse.

MS. O'BRIEN: We'll just leave it.

(Oct. 17, 2014 Tr. Vol. II, 222-24.)

{¶ 6} At the close of the state's evidence, Pugh made a Crim.R. 29 motion for acquittal as to all counts, and the trial court granted the Crim.R. 29 motion regarding the seat belt violation. The trial court found Pugh guilty on stipulated facts of the driving under suspension violation, imposed a $200 fine plus court costs, and suspended Pugh's driver's license. The trial court also found Pugh guilty on the marked lanes and following too closely violations and imposed a $50 fine for each violation. The jury found Pugh guilty of OVI and the operating a vehicle with a prohibited concentration of breath alcohol violations. The trial court determined these were allied offenses and imposed a sentence of three days at a driver intervention program, a term of probation supervision, a class five drivers license rights suspension, and a fine of $375 plus court costs. Pugh filed a timely notice of appeal regarding only the OVI conviction.

## II. Assignment of Error

{¶ 7} Pugh assigns the following error for our review:

Brett J. Pugh was denied the effective assistance of counsel at his trial, to which he was entitled under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Mr. Pugh's trial counsel was ineffective for failing to request a curative instruction or a mistrial after the arresting officer disclosed highly prejudicial suppressed evidence.

## III. Discussion

{¶ 8} In his sole assignment of error, Pugh argues he was deprived of his constitutional right to effective assistance of counsel.

{¶ 9} In order to prevail on a claim of ineffective assistance of counsel, Pugh must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires Pugh to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

If Pugh can so demonstrate, he must then establish that he was prejudiced by the deficient performance. *Id.* To show prejudice, Pugh must establish there is a reasonable probability that, but for his counsel's errors, the result of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id.* at 694.

{¶ 10} In considering claims of ineffective assistance of counsel, courts indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. Pugh contends his trial counsel was ineffective in failing to request a curative instruction or a mistrial after Trooper Dabo testified regarding the previously suppressed evidence.

{¶ 11} In general, an attorney's decision not to request a curative instruction falls within the ambit of trial strategy. *Id.* at ¶ 111, citing *State v. Lawson*, 64 Ohio St.3d 336, 341 (1992); *State v. Davie*, 80 Ohio St.3d 311, 331 (1997). "Tactical or strategic trial decisions, even if ultimately unsuccessful, will not substantiate a claim of ineffective assistance of counsel." *State v. Ryan*, 10th Dist. No. 08AP-481, 2009-Ohio-3235, ¶ 77, citing *In re M.E.V.*, 10th Dist. No. 08AP-1097, 2009-Ohio-2408, ¶ 34. The record here indicates Pugh's trial counsel contemplated a curative instruction, but after some discussion with the trial court, trial counsel made the strategic decision not to request a curative instruction so as not to draw more attention to the improper disclosure by Trooper Dabo. Counsel's decision not to request a curative instruction in this situation reflects an " 'objective standard of reasonable representation.' " *Davie* at 331, quoting *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus.

{¶ 12} Additionally, the trial court instructed the jury during preliminary instructions as follows:

> If a question is asked and an objection to the question is sustained, you will then not hear the answer, and you must not speculate as to what the answer might have been or as to the reason for the objection. If an answer is given to such a question and the Court then grants a motion to strike out the answer, you are to completely disregard such question and answer and not consider that for any purpose. A question in and of itself is not evidence and may be considered by you only as it supplies meaning to the answer.

(Oct. 16, 2014 Tr. Vol. I, 125.)   A reviewing court presumes that the jury followed the court's instructions.  *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 150, citing *Pang v. Minch*, 53 Ohio St.3d 186, 195 (1990).

{¶ 13} Pugh suggests that because of Trooper Dabo's improper disclosure of the previously suppressed statement, Pugh had no choice but to testify in order to clarify the circumstances leading to his arrest.  However, the record belies his argument.  Prior to Pugh taking the stand, his counsel stated on the record that although counsel's initial strategy was not to have Pugh testify, counsel changed its defense strategy "[a]s a result of the Court's determination as to the admissibility of evidence regarding the video and also regarding the admissibility of challenging the specific breath machine."  (Oct. 17, 2014 Tr. Vol. II, 266.)  Thus, Pugh testified in order to rebut the evidence regarding the dashboard camera video of the traffic stop and the breathalyzer test results, not, as Pugh now claims on appeal, as the only way to clarify the circumstances leading to the traffic stop.  Given (1) the conversation on the record indicating trial counsel considered a curative instruction but ultimately chose not to request one so as not to highlight the improper disclosure, (2) the trial court's preliminary instructions to the jury, and (3) the explicitly stated reason on the record for Pugh's testimony, we conclude trial counsel's decision not to request a curative instruction was reasonable trial strategy, and Pugh does not demonstrate otherwise.  *State v. Ryan* at ¶ 79, citing *State v. Griffie*, 74 Ohio St.3d 332, 333 (1996).  As to counsel's failure to request a curative instruction, Pugh cannot satisfy the first prong of the *Strickland* analysis.

{¶ 14} Pugh further argues his trial counsel was deficient for failing to request a mistrial after Trooper Dabo's improper disclosure of the suppressed statements.  Again, we disagree.  "The decision not to request a mistrial is one of trial strategy best left to trial counsel."  *State v. Zeune*, 10th Dist. No. 10AP-1102, 2011-Ohio-5170, ¶ 37, citing *State v. Sieber*, 56 Ohio St.3d 4, 12 (1990).  This court will not lightly second-guess such strategic decisions.  *Id.*, citing *Sieber* at 12.

{¶ 15} "A mistrial is an extreme remedy, 'declared only when the ends of justice so require and a fair trial is no longer possible.' "  *State v. Drayer*, 159 Ohio App.3d 189, 2004-Ohio-6120, ¶ 24 (10th Dist.), quoting *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991).  As we discussed above, when Trooper Dabo made the improper disclosure during

his testimony, Pugh's trial counsel contemplated a curative instruction but decided against it so as not to highlight the information disclosed and based on the possibility that the jury may not have even heard what Trooper Dabo said.  Requesting a mistrial at that juncture similarly would have served to highlight the improper disclosure.  Pugh cannot demonstrate that a fair trial was no longer possible after Trooper Dabo's statement. Moreover, because Pugh does not show that trial counsel's decision not to request a mistrial was anything other than sound trial strategy, we conclude Pugh again is unable to satisfy the first prong of the *Strickland* analysis.

{¶ 16}  Being unable to satisfy the first prong of the *Strickland* analysis with respect to trial counsel's failure to request a curative instruction and trial counsel's failure to request a mistrial, Pugh does not demonstrate he received ineffective assistance of counsel.  Accordingly, we overrule Pugh's sole assignment of error.

## IV. Conclusion

{¶ 17}  Based on the foregoing reasons, Pugh is unable to demonstrate ineffective assistance of counsel.  Having overruled his sole assignment of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

SADLER and HORTON, JJ., concur.

————————————